1

**COMP**
ROBERT M. DRASKOVICH, ESQ.
Nevada Bar No. 6275
TURCO & DRASKOVICH, LLP
815 S. Casino Center Boulevard
Las Vegas, Nevada 89101
Telephone: (702) 474-4222

GARY A. MODAFFERI, ESQ.
Nevada Bar No. 12450
LAW OFFICE OF GARY A. MODAFFERI, LLC
815 S. Casino Center Boulevard
Las Vegas, Nevada 89101
Telephone: (702) 474-4222

ALLEN LICHTENSTEIN, ESQ.
Nevada Bar No. 3992
3315 E. Russell Road
Las Vegas, Nevada 89120
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * *

| | |
|---|---|
| DOES 1-16; and UNKNOWN NAMED DOES 1-1000, <br><br> Plaintiffs, <br><br> vs. <br><br> Adam Paul Laxalt, Attorney General of the State of Nevada; Chris Perry, Director of the Nevada Department of Public Safety; Natalie Wood, Chief Parole and Probation Division of the Nevada Department of Public Safety; Patrick J. Conmay, Chief Records and Technology Division of the Nevada Department of Public Safety; Joseph Lombardo, Sheriff of the Las Vegas Metropolitan Police Department; Alexander Perez, Chief of the North Las Vegas Police Department; Steven Wolfson, District Attorney of Clark County; Chief Patrick Moers, Henderson Police Department, <br><br> Defendants. | CASE NO.: <br><br> **42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> ———————————————— <br><br> **JURY TRIAL DEMANDED** |

1

1.    Come now Plaintiffs, Does 1-16, by and through their attorneys, Robert M. Draskovich, Esq., Gary A. Modafferi, Esq., and Allen Lichtenstein, Esq., and file this Complaint for injunctive and declaratory relief. This is an action under 42 U.S.C. § 1983 to address the unconstitutionality of Nevada Revised Statute (hereinafter "N.R.S.") 213.1243. Plaintiffs challenge the Nevada Board of Parole Commissioners' (hereinafter "the Board") authority to constitutionally create and impose conditions of lifetime supervision pursuant to N.R.S. 213.1243.

## NATURE OF THE ACTION

2.    Plaintiffs, Does 1-16, allege that N.R.S. 213.1243 is void for vagueness in violation of the Due Process Clauses of the United States and Nevada Constitutions. Moreover, Plaintiffs allege that the Board retroactively imposes punitive conditions upon Plaintiffs and other offenders that did not exist in law at the time of the date of their criminal offense (s) and prior to the 2009 amendments to N.R.S. 213.1243. The creation and imposition of these residency and movement requirements and other punitive conditions of the special sentence of lifetime supervision are in violation of the *Ex Post Facto* Clauses of the United States and Nevada Constitutions. Further, Plaintiffs allege that the Board's ostensible adoption of the conditions, specifically enumerated in N.R.S. 176A.410 but not in NRS 213.1243, violates procedural due process, substantive due process, the equal protection clauses, the free exercise clauses, the right to assembly, the *Ex Post*

2

*Facto* Clauses, the Contract Clauses, the Bill of Attainder Clauses, and the Separation of Powers Doctrine of the United States and Nevada Constitutions.

## JURISDICTION

3.     This Court has original subject matter jurisdiction over the federal constitutional violations alleged in this Complaint pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1334.   This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

4.     Under 28 U.S.C. § 1391, the District of Nevada provides a proper venue because all parties were sentenced, currently live, and/or work in Nevada. Their supervision under the special sentence of lifetime supervision emanates from judgments of convictions issued from Nevada state district courts. Additionally, all or a substantial portion of the action occurred within the State of Nevada, Clark County.

## PARTIES

5.     Plaintiff Doe 1, a resident of Washoe County, Nevada, committed a sexual offense on November 3, 2003. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[1]

6.     Plaintiff Doe 2, a resident of Clark County, Nevada, committed a sexual offense on November 1, 2007. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[2]

---

[1] A redacted version of Plaintiff Doe's 1's, Lifetime Supervision Agreement is attached as Exhibit 1.

7.      Plaintiff Doe 3, a resident of Riverside, California, committed a sexual offense on or between 1997. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[3]

8.      Plaintiff Doe 4, a resident of Millard, Utah, committed a sexual offense on or about November 2008 through December 2008. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[4]

9.      Plaintiff Doe 5, a resident of Clark County, Nevada, committed a sexual offense on April 23, 2006. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[5]

10.     Plaintiff Doe 6, a resident of Ramsey, Minnesota, committed a sexual offense on or about November 27, 2009. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[6]

11.     Plaintiff Doe 7, a resident of Clark County, Nevada, committed a sexual offense on June 10, 1996. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243.[7]

---

[2] A redacted version of Plaintiff Doe's 2's, Lifetime Supervision Agreement is attached as Exhibit 2.
[3] A redacted version of Plaintiff Doe's 3's, Lifetime Supervision Agreement is attached as Exhibit 3.
[4] A redacted version of Plaintiff Doe's 4's, Lifetime Supervision Agreement is attached as Exhibit 4.
[5] A redacted version of Plaintiff Doe's 5's, Lifetime Supervision Agreement is attached as Exhibit 5.
[6] A redacted version of Plaintiff Doe's 6's, Lifetime Supervision Agreement is to be supplemented at a later time as Exhibit 6.
[7] A redacted version of Plaintiff Doe's 7's, Lifetime Supervision Agreement is attached as Exhibit 7.

12.     Plaintiff Doe 8, a resident of Clark County, Nevada, committed a sexual offense between January 1, 2001 and December 3, 2003. He was sentenced to a term of lifetime supervision to be in imposed upon release from any term of imprisonment, probation or parole. He is currently under the demands of a parole agreement executed on January 7, 2015. His term of lifetime supervision will commence after the termination of his parole agreement.[8]

13.     Plaintiff Doe 9, a resident of Clark County, Nevada, committed a sexual offense on November 26, 2012. He is currently on lifetime supervision with over 21 conditions imposed by the Board pursuant to N.R.S. 213.1243[9]

14.     Plaintiff Doe 10, a resident of Clark County, Nevada, committed a sexual offense between November 1, 2003 and October, 2005. He was sentenced to a term of a sentence of lifetime supervision to begin after release from any term of imprisonment or parole. On August 24, 2011, Plaintiff Doe 10 was made to sign a lifetime supervision agreement. None of the conditions contained in the agreement were contained either in the Defendant's plea agreement or in any statutory codification under Nevada law. On or between April 19, 2012 and March 18, 2013 the Plaintiff was alleged to have violated his lifetime supervision agreement and on

---

[8] Redacted versions of Plaintiff Doe 8's Judgment of Conviction (Plea of Guilty – Alford) and his Parole Agreement are attached collectively as Exhibit 8.
[9] A redacted version of Plaintiff Doe's 9's, Lifetime Supervision Agreement is attached as Exhibit 9.

5

July 9, 2015 an Information charging him with a Class B Felony was filed in the District Court, Clark County, Nevada.[10]

15.     Plaintiff Doe 11, a resident of Clark County, Nevada committed a sexual offense on or between December 1, 2003 and April 30, 2004. He was sentenced on August 11, 2010 to a special sentence of lifetime supervision to commence upon release from any term of imprisonment, probation or parole. Plaintiff Doe 11 was honorably discharged from parole on October 8, 2012. On October 8, 2012, Plaintiff Doe 11 was made to sign a lifetime supervision agreement with multiple residency and movement restrictions. He is currently on lifetime supervision with punitive conditions created and imposed by the Board pursuant to NRS 213.1243.[11]

16.     Plaintiff Doe 12, a resident of Clark County, Nevada entered an Alford plea to a sexual offense allegedly committed on or between June 30, 2002 and October 11, 2008. He was sentenced to probation and a special sentence of lifetime supervision on July 23, 2008. As with all of the other Plaintiff Does, neither the Plaintiff's Guilty Plea Agreement nor his Judgment of Conviction contained any of the punitive conditions that would comprise the special sentence of lifetime supervision. The Plaintiffs' conditions of probation were specific and found within the law at NRS 176A.410. The conditions of lifetime supervision were not codified

---

[10] Redacted versions of Plaintiff Doe 10's Guilty Plea Agreement containing the Information, Judgment of Conviction, Lifetime Supervision Agreement, and his recent Information charging him with Violation of Lifetime Supervision by Convicted Sex Offender are attached collectively as Exhibit 10.

[11] Redacted versions of Plaintiff Doe 11's Guilty Plea Agreement, Information, Judgment of Conviction, and Honorable Discharge from Parole are attached collectively as Exhibit 11.

under Nevada law. The Plaintiff was honorably discharged from probation on September 28, 2012. He is currently serving his special sentence of lifetime supervision.[12]

17.     Plaintiff Doe 13, a resident of Glendale, Arizona, committed a sexual offense on or about June 26, 2006 and June 28, 2006. On January 9, 2008, the Plaintiff was sentenced to probation and a special sentence of lifetime supervision pursuant to NRS 213.1243. He is currently under the control and enforcement powers of Adult Probation Department, Pinal County, Arizona "for a period of lifetime" based upon the special sentence of lifetime supervision handed down by a Nevada state district court.[13]

18.     Plaintiff Doe 14, a resident of Clark County committed a sexual offense on August 31, 2012. He was placed on probation and honorably discharged from probation in 2007. The Defendant was sentenced to lifetime supervision in 2003. He is currently serving his special sentence of lifetime supervision.[14]

19.     Plaintiff Doe 15, a resident of Clark County, Nevada committed a sexual offense on or between December 9, 2012 and December 10, 2012. He is

---

[12] Redacted versions of Plaintiff Doe 12's Guilty Plea Agreement, Information, Judgment of Conviction, Lifetime Supervision Agreement, and Order Honorably Discharging Probationer are attached collectively as Exhibit 12.

[13] Redacted versions of Plaintiff Doe's Guilty Plea Agreement, Judgment of Conviction, Amended Judgment of Conviction, Amended Information and the implementation of the special sentence of lifetime supervision as interpreted and imposed by the Adult Probation Department, Pinal County, Arizona County Superior Court are attached as Exhibit 13.

[14] A redacted version of Doe 14's Lifetime Supervision Agreement, Guilty Plea Agreement, Judgment of Conviction filed March 18, 2003, Amended Judgment of Conviction filed February 18, 2004, 2nd Amended Judgment of Conviction filed March 11, 2004, and Order Discharging Probationer filed March 21, 2007 are attached as Exhibit 14.

7

currently on lifetime supervision with over 20 conditions and several pending conditions yet to be decided by the Board.[15]

20.     Plaintiff Doe 16, a resident of Clark County, Nevada committed a sexual offense on or between September 28, 2003 and October 15, 2004. He was sentenced on June 30, 2005 to probation and a term of lifetime supervision to begin after his completion of probation.[16] He is currently serving his special sentence of lifetime supervision imposed pursuant to N.R.S. 213.1243.

21.     "Does" herein refers to Does 1-16.

22.     Defendant Adam Paul Laxalt, Esq., is the Attorney General of the State of Nevada and is sued in his official capacity.

23.     Defendant Chris Perry is the Director of Public Safety of the Nevada Department of Public Safety and is sued in her official capacity.

24.     Defendant Natalie Wood is the Chief of the Parole and Probation Division of the Nevada Department of Public Safety. The Parole and Probation Division is vested with the authority to enforce N.R.S. 213.1243. Defendant Wood is sued in her official capacity.

25.     Defendant Patrick J. Conmay is Chief of the Records and Technology Division of the Nevada Department of Public Safety. The Records and

---

[15] A redacted version of Plaintiff Doe 15's Lifetime Supervision Agreement, Guilty Plea Agreement, and Judgment of Conviction are attached collectively as Exhibit 15.

[16] A redacted version of Plaintiff Doe 16's Lifetime Supervision Agreement is attached, along with his Petition and Order Honorably Discharging Probationer filed November 29, 2007, his Guilty Plea Agreement filed on April 21, 2005 and his Judgment of Conviction filed on June 30, 2005 are attached collectively as Exhibit 16.

Technology Division is vested with authority to enforce N.R.S. 213.1243. Defendant Conmay is sued in his official capacity.

26.     Defendant Joseph Lombardo is Sheriff of the Las Vegas Metropolitan Police Department ("L.V.M.P.D."). L.V.M.P.D. is vested with the authority to enforce N.R.S. 213.1243. Defendant Lombardo is sued in his official capacity.

27.     Defendant Alexander Perez is Chief of the North Las Vegas Police Department. The North Las Vegas Police Department is vested with the authority to enforce N.R.S. 213.1243. Defendant Perez is sued in his official capacity.

28.     Defendant Steven Wolfson is the District Attorney for Clark County, Nevada. Defendant Steven Wolfson is sued in his official capacity.

29.     Defendant Patrick Moers is Chief of Police of the Henderson Police Department. The Henderson Police Department is vested with the authority to enforce N.R.S. 213.1243. Defendant Moers in sued in his official capacity.

30.     "Defendants" herein collectively refers to Laxalt, Perry, Wood, Conmay, Lombardo, Perez, Wolfson, and Moers.

## STANDING

31.     All Plaintiffs have standing because N.R.S. 213.1243 and its enforcement directly violate Plaintiffs' rights under The United States Constitution and The Constitution of the State of Nevada.

9

1

2

## GENERAL ALLEGATIONS

3

**I.   The Special Sentence of Lifetime Supervision**

4

5          32.     The State of Nevada passed N.R.S. 176.0931 in 1995. Pursuant to

6   N.R.S. 176.0931, the court shall include a special sentence of lifetime supervision to

7   a defendant convicted of certain sexual offenses. At the time of sentencing, the

8   court does not notify the offender of the conditions of lifetime supervision because

9   no Nevada state statute expressly prescribes or defines the actual conditions of

10  lifetime supervision. Instead, the conditions of the sentence are imposed in an *ad*

11  *hoc* fashion at the sole discretion of the State Board of Parole Commissioners.

12          In conjunction with N.R.S. 176.0931, the State of Nevada passed N.R.S.

13  213.1243. N.R.S. 213.1243 grants "The Board" the authority to establish a program

14  of lifetime supervision. N.R.S. 213.005 defines "Board" as the State Board of

15  Parole Commissioners. As part of the program, the Board creates and imposes the

16  conditions of lifetime supervision even though the specific conditions do not or did

17  not exist in at law under the Nevada Revised Statutes.

18          33.     The Board imposes a minimum of 19 standard conditions to Tier I,

19  II, and III offenders on lifetime supervision. In 2005, the State of Nevada amended

20  N.R.S. 213.1243 to expressly state four conditions that apply to Tier III offenders

21  on lifetime supervision. As for the rest of the conditions, the Board ostensibly

22  borrows the required terms and conditions for sex offenders on probation from

23  N.R.S. 176A.410 and imposes those conditions to Tier I, II, and III offenders on

24

lifetime supervision, including the four conditions applicable to only Tier III offenders. No statutory authority to borrow these conditions from NRS 176A.410 exists within the Nevada Revised Statutes. Lifetime supervision agreements uniformly include a catch all clause allowing the Board to create and impose any condition they deem necessary as part of the special sentence of lifetime supervision.

34.     Additionally, the Board imposes residency and movement restrictions added to N.R.S. 213.1243 in Senate Bill 471 ("SB 471") in 2007. This is true of all Plaintiffs. These residency and movement conditions represent the same conditions that this Honorable Court concluded would not apply retroactively in ACLU v. Masto, 670 F.3d 1046, 1067 (9th Cir. 2012) (hereinafter referred to as ACLU v. Masto II), after the State entered a binding judicial admission agreeing not to retroactively impose those types of conditions.

35.     In 2007, the Nevada Legislature passed two bills regarding individuals who had been convicted of sex offenses, A.B. 579 (provisions regarding sex offender registration; specifically, reclassification, registration, and notification) and SB. 471 (provisions regarding lifetime supervision; specifically imposing residence and movement restrictions and other punitive conditions). S.B. 471, dealt strictly with the special sentence of lifetime supervision and was being applied retroactively. Plaintiffs challenged it on a variety of constitutional grounds. American Civil Liberties Union of Nevada v. Cortez-Masto, 719 F.Supp. 1258, 1259 (D.Nev. 2008). Plaintiffs submitted declarations to the District Court attesting

11

to the fact that the Nevada Department of Parole and Probation was applying

residence and movement restrictions retroactively. *Id.* at 1260.

36.     The U.S. District Court ruled both the challenged retroactive

provisions of A.B. 579 and S.B. 471 unconstitutional:

> Because of the changed standards, numerous people: (1) whose
> crimes were committed in the distant past; (2) who have been
> determined by the state of Nevada to be unlikely to re-offend; and (3)
> who have complied with the law, attended counseling, and who have
> not committed additional crimes would be thrown back into the
> system or be subject to more onerous monitoring and residency
> requirements. . . .
> The application of these laws retroactively is the equivalent of a new
> punishment tacked on to the original sentence-sometimes years after
> the fact-in violation of the Ex Post Facto and Double Jeopardy
> Clauses of the U.S. Constitution, as well as the Contracts clauses of
> the U.S. and Nevada Constitutions. Moreover, because they do not
> provide any procedural protections from their retroactive application,
> A.B. 579 and S.B. 471 violate the Due Process Clause of the U.S.
> Constitution.

1258 F.Supp.2d at 1260.

37.     The State then appealed the District Court ruling to the United States

Court of Appeals for the Ninth Circuit, which issued its ruling on February 10, 2012.

American Civil Liberties Union of Nevada v. Cortez-Masto, 670 F.3d 1046 (9th Cir.

2012). The Court of Appeals reversed the District Court's decision regarding A.B.

579 and ruled that Defendants/Appellants appeal of the District Court's decision

regarding S.B. 471 was moot based on the State's representation that it would not

apply S.B. 471 retroactively.

> With respect to Assembly Bill 579, we hold that its retroactive
> application is constitutionally sound, and we reverse. With respect to
> Senate Bill 471, we conclude that our consideration of its disputed
> provisions was mooted by **the State of Nevada's authoritative**
> **judicial admission that—regardless of the existence of the**
> **injunction—the State will not retroactively impose residency and**

12

**movement restrictions.** Because the State's concession moots its own appeal, we remand to the district court to consider vacating its Order as to Senate Bill 471 in favor of a binding consent decree. But if no consent decree can be negotiated, our dismissal of the State's appeal will leave the district court's injunction in vigor.

Cortez- Masto, 670 F.3d at 1050 (emphasis added).

A.B. 579 was also considered by the Ninth Circuit. The Court of Appeals relied primarily on the United States Supreme Court decision in Smith v. Doe, 538 U.S. 84 (2003), for its determination that registration of sex offenders was not punishment. Therefore A.B. 579's retroactive registration requirement did not violate constitutional rights.

Because Nevada's version of SORNA does not contain any registration provision that materially distinguishes it from Smith, we join them [other circuits] in concluding that the requirements of AB 579 do not constitute retroactive punishment in violation of the Ex Post Facto Clause or Double Jeopardy Clause.

Cortez-Masto, 670 F.3d at 1053 (citing Smith, 538 U.S. at 105-106).

38.   The Ninth Circuit reached a different conclusion regarding S.B.471. As noted above, the Court ruled that the Defendants' appeal of the District Court's invalidation of the retroactive residence and movement restrictions of S.B.471 was mooted by representations made to the appellate court by the State's counsel at oral argument.

39.   On July 16, 2014 in The American Civil Liberties Union of Nevada, et al. v. Catherine Cortez Masto et. al., in the United States District Court District of Nevada, 2:08-cr-822-JCM (PAL), the Honorable District Court, District of Nevada, United States District Court Judge Mahan presiding, granted the parties joint motion for a more definitive statement regarding the clarification of the scope of the

13

injunction of S.B. 471. (doc. 155) The Court ordered follow up briefing and had a hearing on June 25, 2014.

40.     On pp. 2-3 of the State's April 24, 2014 Opening Brief (doc. 151), the State acknowledges that the retroactive residence and movement restrictions, previously declared unconstitutional by Judge Mahan, and that were also previously represented to the Ninth Circuit panel as not being in effect, were, in fact, formerly, presently and prospectively in the future, being utilized, not under statute (S.B. 471 – which had been declared unconstitutional), but as a policy and practice of the Department of Parole and Probation (P&P) under their general authority.

> At the time this order was entered, neither party discussed the movement and residency restrictions that were in place statutorily and enforced prior to the enactment of S.B. 471. The dispute between the parties is whether these statutory restrictions may be enforced. For convictions prior to February 8, 2013, the date of the amended order (Doc. 143), Parole and Probation (P&P) continues to enforce the movement and residency restrictions that were in place prior to the enactment of S.B. 471:

41.     The State, for whatever reason did not inform the District Court or the Ninth Circuit of the fact that despite its assertions that no retroactive application of residence and movement restrictions would occur in the future, that it never stopped imposing those restrictions under prior Parole and Probation Department (P&P) policy, nor did it plan to. These Does are currently subject to these applications.

42.     The State's position is that even though the retroactive application of residence and movement restrictions was admitted to be unconstitutional under S.B.

471 for a certain class of offenders, that exact practice is permissible as P&P policy and practice, as to another class of offenders.

43.     The District Court found that the continued application of the residency and movement restrictions that existed prior to the enactment of SB 471, as P&P policy, was beyond the scope of the case and controversy before it, which only applied to S.B.471.   The Court stated that because the only matters before that Honorable Court and the Ninth Circuit were the prospective application of S.B. 471.The Court stated … "that nothing in the injunction shall prohibit the continued application of the movement and residency restrictions that were in effect prior to the enactment of SB 471, as the validity of those restrictions is not, and never has been properly before the court (Doc. 155 at p.2). The retroactive application of residency and movement requirements after the enactment of S.B. 471 was enjoined by a binding judicial admission by the State that it would absolutely not enforce those conditions. The instant Complaint for Declaratory and Injunctive Relief requests remedial action for circumstances not addressed in the Court's previous order, as well as the enforcement of the Court's prior order that resulted from the binding judicial admission.

II.   **Conditions created and imposed by the Board pursuant to 213.1243**

44.     The authority granted pursuant to N.R.S. 213.1243 to the Division of Parole and Probation of the Department of Public Safety ("Division") resulted in the Division creating its own operating conditions to impose the special sentence

lifetime supervision in the Nevada Administrative Code ("N.A.C.") in 2000. According to N.A.C. 213.290(1), the Department of Corrections ("Department") shall give the Division written notification of an offender's release at least 120 days prior to the first day of the month that the offender commences his sentence of lifetime supervision. The Division communicates this information to the Board at least 90 days prior to the first day of the month that the offender commences his sentence of lifetime supervision. Once the Board receives notification, the Board holds a "hearing" to establish the conditions imposed as part of the offender's lifetime supervision.

45.     During this "hearing," the offender does not get the opportunity to make any statements. In fact, the Board imposes the conditions without the offender present. The Board entertains testimony from victims pursuant to N.R.S. 213.130(4). The Board also has the discretion to close off part of the "hearing" for confidential information as provided in N.R.S. 213.130(8). Typically, the Board sets the conditions for several offenders at a single hearing as provided in N.A.C. 213.290(3)(b). N.A.C. 213.290(5) mentions the option of the offender being present during a modification of the conditions if requested by the Division, but does not make the offender's presence mandatory.

46.     After the Board sets the conditions, the offender cannot contest the conditions of his lifetime supervision. According to the Parole and Probation Division Directive 6.3.131(C)(1)(f), the offender receives a lifetime supervision

1    agreement 10 days before release of imprisonment, which the offender must sign or

2    else risk another felony conviction and sentence of one to six years imprisonment.

3    47.    Plaintiffs' lifetime supervision agreements contains many of the standard

4    conditions given to probationers as expressed in N.R.S. 176A.410. An offender on

5    lifetime supervision must submit to the conditions of reporting/release, residence,

6    intoxicants, controlled substances, weapons, associates, cooperation, laws and

7    conduct, out-of-state travel, employment/program, supervision fees, curfew,

8    counseling, polygraph examination, no contact, alias names, no post office box, and

9    no contact with persons under 18 years of age, presence, and search restrictions as

10   an offender on probation.

11   48.    The Board retains the right to change the conditions at a whim since

12   Plaintiffs' lifetime supervision agreements include a clause stating "that the Board

13   Parole Commissioners has the power, at any time, to modify the conditions of

14   supervision."

15   49.    The conditions expressed in the actual lifetime supervision agreement vary

16   from the language of N.R.S. 213.1243. For instance, N.R.S. 213.1243(4) expressly

17   prohibits Tier III offenders from being within 500 feet of any place designed

18   primarily for the use of children, including a private or public school, video arcade,

19   playground, park, or motion theater, etc. Yet, the Board expands the statutory

20   language by imposing as a "presence" condition that the offender, regardless of

21   Tier, must not be in or near a playground, school, or school grounds, movie theater,

22   or business that primarily has children or events children attend.

23                                           17

24

50.     Similarly, N.R.S. 213.1243(a)-(c) did not exist until the State of Nevada expressly added these provisions into the statute. Regardless, the Board imposed broad residency restrictions prior to the amendment, which requires the offender to obtain permission to reside at a specific location from his Parole Officer. Moreover, the Board continues to use the same broad residency restrictions to an offender commencing lifetime supervision today. Further, N.R.S. 213.1243(9) gives the Board the discretion to disregard three of the four conditions expressed if the Board finds "extraordinary circumstances" present, but fails to define what "extraordinary circumstances" must exist.

51.     Consequently, the offender finds no relief from the conditions until 10 years after his conviction when he may petition either the Board or the court to seek release from lifetime supervision.

### III. Punishment for a violation of a condition imposed pursuant to N.R.S. 213.1243

52.     Pursuant to N.R.S. 213.1243(8), an offender who violates the conditions of lifetime supervision becomes "guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000." If an offender violates any of the conditions that the Board imposes, the State charges the offender with a new felony and imprisonment. Once the offender completes the sentence for the violation, the offender resumes the

special sentence of lifetime supervision as imposed by the Board prior to the violation with the possibility of more special conditions.

53.     Counsels for the Plaintiffs have sought relief for similarly situated plaintiffs in the Supreme Court of Nevada. However, on March 27, 2014 the Supreme Court of Nevada published Coleman v. State, 130 Nev. Advance Opinion 22.[17] In Coleman, the Court held, "that a person who is subject only to lifetime supervision is not under a sentence of imprisonment within the meaning of NRS 34.724(1) and therefore cannot file a post-conviction petition for a writ of habeas corpus to challenge his sentence."[18] Counsel argued that without the ability to utilize NRS 34.724, Coleman and several dozen other petitioners who had filed similar claims with the Nevada Supreme Court would be left with an unconstitutional sentence and no remedy. The Nevada Supreme Court addressed this point in the decision stating:

> Coleman contends that he is left without a remedy if he cannot challenge his sentence and conditions of lifetime supervision in a post-conviction petition for a writ of habeas corpus. Even assuming this was correct, the post-conviction petition for a writ of habeas corpus is a creature of statute and we cannot ignore the plain language of NRS 34.724(1) that restricts its use. The State acknowledges that while traditional post-conviction relief is not available, Coleman could still pursue injunctive relief pursuant to NRS 33.010. Although we do not attempt to catalogue the full panoply of remedies available to challenge the conditions of lifetime supervision including the extent to which the conditions could be challenged in defense of a charge under NRS 213.1243(8) for violating a condition of lifetime supervision, we note that some challenges to those conditions may be pursued in a civil rights action under 42 U.S.C. § 1983. Nevada law also provides a means for Coleman to petition to be released from lifetime

---

[17] A copy of the Court's decision is attached as Exhibit 17 for this Honorable Court's convenience.
[18] Id at p.7.

supervision if he meets certain conditions. NRS 176.0931(3). Coleman therefore is not left without a remedy.[19]

**IV. The effects of the special sentence of lifetime supervision on Does 1-16**

<u>**Doe 1**</u>

Plaintiff Doe 1 accepted a plea agreement on August 19, 2004, pleading to one count of Using Technology To Lure Children.  On October 19, 2004, the court sentenced Doe 1 to a prison term in the Nevada State Prison for the minimum term of twelve (12) months to a maximum term of forty-eight (48) months. The prison sentenced was suspended and Doe 1 was placed on probation for an indeterminate period of time not to exceed sixty (60) months, in addition to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.   On April 24, 2004, Doe 1 commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 1 is deaf and lives in Reno, Nevada. Doe 1 is a college graduate who was gainfully employed. Due to his sentence of lifetime supervision, Doe 1 has a difficult time finding work because of his disability and the impact of his lifetime supervision conditions.  Doe 1 has family out of state and has had difficulties seeing them due to conditions of lifetime supervision. Furthermore, Doe 1 has a difficult time finding and keeping any type of substantive relationship in his life due to the conditions that have been imposed on him.

<u>**Doe 2**</u>

Plaintiff Doe 2 accepted a plea agreement on August 8, 2007, pleading to one count of Attempt Lewdness With a Child Under the Age of 14.  On November 1, 2007, the court sentenced Doe 2 to a prison term in the Nevada State Prison for the minimum term of forty-eight (48) months to a maximum term of one hundred-twenty (120) months. The prison sentenced was suspended and Doe 2 was placed on probation for an indeterminate period of

---

[19] Id at p.7. A summary of Mr. Coleman's constitutional arguments are presented in Appellant's Opening Brief, attached as Exhibit 18, and in Appellant's Reply Brief, attached as Exhibit 19.

time not to exceed sixty 5 years, in addition to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  On December 22, 2010 Doe 2 was honorably discharged from probation.  Also on December 22, 2010, Doe 2 commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 2 lives in Las Vegas, Nevada. Doe 2 was gainfully employed but due to his sentence of lifetime supervision he lost his job and had a hard time finding work.  Furthermore, Doe 2 has a family out of state and has had a difficult time seeing them and keeping a close relationship with his family due to his conditions of lifetime supervision.

**Doe 3**

Plaintiff Doe 3 accepted a plea agreement on August 13, 1997, pleading to one count of Lewdness With a Child Under the Age of 14 and one count of Possession of Visual Presentation Depicting Sexual Conduct of Person.  On October 9, 1997, the court sentenced Doe 3 to a prison term in the Nevada State Prison for Count 1: minimum term of twenty-four (24) months to a maximum term of one hundred twenty (120) months; Count 2 minimum twelve (12) months to a maximum of thirty-six (36) moths. Both prison sentences were suspended and Doe 3 was placed on probation for an indeterminate period of time not to exceed sixty 5 years, in addition to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  On August 22, 2002, Doe 3 was honorably discharged from probation.  Also on August 22, 2002, Doe 3 commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 3 was gainfully employed but due to his sentence of lifetime supervision he was fired from his job has a difficult time finding work because lifetime supervision conditions.  Doe 3 is currently married his wife along with other family currently live out of state. Due to his lifetime supervision conditions it is nearly impossible for him to see his wife and his family. Furthermore, Doe 3 is under medical treatment and must travel out of state to obtain specialized medical treatment. Due to his movement restrictions his medical treatment has been prolonged.

21

**Doe 4**

Plaintiff Doe 4 accepted a plea agreement on October 20, 2009, pleading to one count of Attempt Lewdness With a Minor.  On December 14, 2009, the court sentenced Doe 4 to a prison term in the Nevada State Prison for the minimum term of twenty-four (24) months to a maximum term of ninety-six (96) months. Doe 4 was also sentenced to special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  On August 1, 2013, Doe 4 commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 4 currently lives in Utah.  His current job has opportunities that involve traveling. Due to his sentence of lifetime supervision, Doe 4 has been denied these work opportunities. Furthermore Doe 4 has family in Idaho and Arizona and has had difficulty seeing them and maintaining a relationship with his family due to the conditions of lifetime supervision.

**Doe 5**

Plaintiff Doe 5 accepted a plea agreement on June 8, 2006, pleading to one count of Attempt Lewdness With a Child Under the Age of 14.  On August 22, 2006, the court sentenced Doe 5 to a prison term in the Nevada State Prison for the minimum term of forty-eight (48) months to a maximum term of one hundred eighty (180) months. Doe 5 was also sentenced to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  Doe 5 commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 5 lives in Las Vegas, Nevada. Doe 5 is currently enrolled in school. Due to his sentence of lifetime supervision and not being able to have a computer, Doe 5 has a nearly impossible time performing and finishing his schoolwork. Doe 5's classes also require trips to certain destinations that he has been unable to go to because of his movement conditions. Moreover, Doe 5 has had job opportunities but do to his conditions he has been unable to get hired.  Furthermore Doe 5 has family out of state and has been unable to attend family functions such as wedding, etc. due to his conditions.

22

**Doe 6**

Plaintiff Doe 6 accepted a plea agreement on October 8, 2010, pleading to one count of Attempt Sexual Assault and to one count of Coercion.  On February 3, 2011, the court sentenced Doe 6 to a prison term in the Nevada State Prison on count 1 for the minimum term of twenty-four (24) months to a maximum term of ninety-six (96) months and count 2 for a minimum of twelve (12) months to a maximum term of thirty-six (36) months to be served concurrently with sentence imposed in count 1. Doe 6 was also sentenced to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  On August 28, 2013 Doe 6 was placed on parole and he later commenced his sentence of lifetime supervision with the Board imposing their standard but legally unspecified special conditions.  Doe 6 currently lives in Minnesota. Doe 6 has had many job opportunities that he has had to decline due to the restrictions of his conditions of lifetime supervision.

**Doe 7**

Plaintiff Doe 7 accepted a plea agreement on September 26, 1997, pleading to one count of sexual assault and battery with the intent to commit sexual assault. The court sentenced Doe 7 to a prison term in the Nevada State Prison for the minimum term of ten (10) years to a maximum term of (25) years, and in addition to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  On November 30, 2010, Doe 7 was released from prison. Also upon his release from incarceration, Doe 7 commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 7 lives in Las Vegas, Nevada.  Doe 7 had difficulties finding a job due to the conditions that he is subject to. Doe 7 also has incurred expenses for computer monitoring on his work and personal computers, which can be faulty and corrupt his work files by no fault of his own.  This has created a financial burden to Doe 7 considering that he also has a family he needs to provide for.  Furthermore, Doe 7 has family out of state and has difficulty seeing them due to movement conditions imposed on him through his special sentence of lifetime supervision.

**<u>Doe 8</u>**

Plaintiff Doe 8 accepted a plea agreement on October 19, 2009, pleading to two counts of Attempt Lewdness With a Child Under the Age of 14.  On April 26, 2010, the court sentenced Doe 8 to a prison term for both counts in the Nevada State Prison for the minimum term of forty-eight (48) months to a maximum term of one hundred twenty (120) months and for both sentences to run concurrently. Doe 8 was also sentenced to special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  In January 2015, Doe 8 was released from prison and placed on parole with conditions.  Doe 8 will commence his sentence of lifetime supervision soon with the Board imposing standard and special conditions.  Doe 8 lives in Las Vegas, Nevada. It is anticipated that Doe 8 will be subject to the same hardships as the other plaintiffs on lifetime supervision.  This would include struggling to find and maintain gainful employment, maintaining relationships with family members outside of the state of Nevada, as well any other of the foreseeable issues that have affected the other plaintiffs. Doe 8 must sign his lifetime supervision agreement or he will be committing a felony under Nevada law.

**<u>Doe 9</u>**

Plaintiff Doe 9 accepted a plea agreement on July 19, 2012, pleading to one count of Attempt Luring Children or Mentally Ill Persons with the Intent to Engage in Sexual Conduct. On November 26, 2012, the court sentenced Doe 9 to a prison term of a minimum of twelve (12) months and maximum of forty-eight (48) months in the Nevada Department of Corrections; suspended and placed on probation for an indeterminate period not to exceed four (4) years. Doe 9 was also sentenced to a special sentence of lifetime supervision to commence after any period of probation or after any term of imprisonment or after any period of release from parole.  In June 2015, Doe 9 was released from probation and placed on parole with conditions.  Doe 9 has commenced his sentence of lifetime supervision with the Board imposing standard and special conditions.  Doe 9 lives in Las Vegas, Nevada. Doe 9 has been subject to the several hardships due to being on lifetime supervision.  These hardships include struggling financially due to the fact that he has to pay monthly

24

monitoring fees on his equipment for work, paying to live on his own due to the fear that having a roommate may cause issues for him because of his conditions. Doe 9 has had to leave his field of work and has turned down several job offers due to the necessity to travel for work and his special sentence of lifetime supervision prohibits such travel.

**<u>Doe 10</u>**

Plaintiff Doe 9 is an ex-Navy serviceman who was convicted on February 8, 2006 for the crime of Attempt Sexual Assault. The date of offense was between November 1, 2003 and October, 2005 in C217917. He was sentence to thirty-three to one hundred forty-four months in the Nevada Department of Corrections. He was discharged from custody on September 1, 2011. The Defendant could not find a job after his release from prison because of the exacting and punishing terms of his special sentence of lifetime supervision. The Defendant has become an integral part of his local church and with the help of his fellow church members he has started a business raising hogs for sale to local strip restaurants. The hog farm is located in Arizona and he must obtain permission to travel there as part of his special sentence of lifetime supervision. Since his release, the Plaintiff has been charged with violation of his special sentence of lifetime supervision by failing to enroll in a sexual offender class and for being arrested for simply battery. The battery charge was dismissed and the Plaintiff provided proof that he attended well over a dozen similar classes while incarcerated. However, the State is still attempting to convict Plaintiff Doe of this Class B Felony. Doe 11 is unable to afford the counseling that is now being ordered although he has already successfully completed years of counseling.

**<u>Doe 11</u>**

Doe 11 accepted a plea agreement on May 13, 2010 whereby he entered an <u>Alford</u> plea to a sexual offense. The court sentenced the Plaintiff to a two to five year term of imprisonment and a special sentence of lifetime supervision. Plaintiff Doe 11 began serving his special sentence of lifetime supervision on October 13, 2012 after being honorably discharged from parole. None of the conditions in this sentence were codified at law at the time of his offense. Similarly, none of the conditions of his special sentence of lifetime supervision were contained in either his plea agreement or in his judgment of conviction. This is true of

all Does 1-16.  Plaintiff Doe 11 is twenty-five years old. He is no longer working because six parole and probationer officers recently arrested him at his job site and he was terminated. No charges were brought. No explanations for the alleged violations of his special sentence of lifetime supervision were given by authorities. Since being placed on lifetime supervision, Plaintiff Doe 11 has been invited for job interviews, business opportunities, and schooling opportunities in Washington, Illinois and California. He has been denied travel to any of these places by Parole and Probation. Plaintiff Doe 11 had been helping family friends care for a child. Plaintiff Doe 11 had been helping with the care of this boy since 2012. Because of his special sentence of lifetime supervision he can no longer be in the boy's presence. Plaintiff Doe 11 had been raised in the foster care system. He is and wants to be a hard worker. After his recent firing, Parole and Probation have denied his opportunity to take grave yard work because they have imposed a curfew.

**Doe 12**

Plaintiff Doe 12 accepted an <u>Alford</u> plea pursuant to plea agreement on April 2, 2009. The court sentenced Plaintiff 12 to probation and a special sentence of lifetime supervision. The conditions of probation were specifically set forth in the judgment of conviction and they could be found at NRS 176A.410. The conditions that would comprise Plaintiff Doe 12's special sentence of lifetime supervision were never codified at law and are more onerous than his conditions of probation. The Plaintiff's conditions of lifetime supervision were imposed on December 5, 2012. Since that time, the Plaintiff has been denied the opportunity to travel to the Philippines to fulfill the mandate of his K-1 visa. This prohibition has prevented the Plaintiff from marrying the woman he loves. The Plaintiff is a disabled and decorated combat veteran. He served in the Army from December of 1983 to January of 1996. His DD214 lists the following decorations, medals etc. "NDSM // VSM W/1BSS // RVCM, AFM900-3" indicating he was present in these operations during conflict. The Department of Veterans Affairs has officially diagnosed this Plaintiff with Combat Related Post Traumatic Stress Disorder (CR PTSD). Plaintiff Doe 12 underwent a psychosexual evaluation before sentencing and received the lowest possible score. The Plaintiff has a Master's Degree in Public Administration and a Bachelor's Degree in Computer

Management. The conditions of lifetime supervision have prevented his use of a computer without a disruptive monitoring system. This Plaintiff has been prevented from family affairs and visits because of the possibility of a minor being present.

## Doe 13

Plaintiff Doe 13 accepted a plea agreement on September 19, 2007. On January 9, 2008, Plaintiff Doe 13 was sentenced to probation not to exceed the years. The conditions of his probation were detailed in his Judgment of Conviction. They were derived from existing law, found and referenced at NRS 176A.410. Plaintiff Doe 13 was also sentenced to a special sentence of lifetime supervision. Those conditions were not detailed in either the plea agreement or in the Judgment of Conviction. The reason for this failure is because these conditions were not codified under Nevada law. The conditions of the special sentence of lifetime supervision would later be developed, and imposed upon Plaintiff Doe 13 through the Adult Probation Department of the Pinal County Superior Court. Those conditions include prohibitions on travel outside the county unless previous permission is obtained. Plaintiff Doe 13 cannot operate a car alone without prior permission. The location of the Defendant's residence must receive prior approval from the Adult Probation Department. These onerous conditions are being imposed through the conduit of Plaintiff Doe's Nevada Lifetime Supervision sentence. The conditions have had a disabling impact on Doe 13's life. He was forced to switch occupation as phone line splicer because of the travel restrictions. He has not been able to engage in any relationships with the women he has met because they have children and he cannot be near children. He cannot go to a movie without getting prior permission. Recently, his best friend died but he was unable to attend the funeral because of the travel restrictions.

## Doe 14

Plaintiff Doe 14 is a fifty-five year old male who entered in a plea agreement with the State of Nevada on January 6, 2003, pleading guilty to one count of Attempt Lewdness with a Minor (Category B Felony) and one count of False Imprisonment (Gross Misdemeanor). The date of offense was August 31, 2002. On March 10, 2003 Plaintiff Doe 14 was sentenced to a term of probation and a special sentence of lifetime supervision. The

Defendant has been continuously gainfully employed for the entire time he has been on both probation and lifetime supervision. Plaintiff Doe 14 was given an Order Honorably Discharging Probationer on March 21, 2007. Soon thereafter, he was forced to file a lifetime supervision agreement in accordance with his special sentence of lifetime supervision. Plaintiff Doe 14 has recently been assessed in a psychosexual evaluation and has been determined to present the lowest statistical risk of reoffending. Over the past several weeks, as a direct consequence of his special sentence of lifetime supervision Plaintiff Doe 14 was denied a supervisory position at the mortgage company he works at because of travel restrictions imposed by the "Board" through his agreement. This lost opportunity will cost the Plaintiff thousands of dollars in increased pay. In 2007, this Plaintiff was forced to relocate his mother from Phoenix, Arizona to Henderson, Nevada. His mother was suffering from Alzheimer's disease and because of his travel restrictions Plaintiff Doe 14 could not visit her. Each time this Plaintiff wants to travel to see his family or his girlfriend's family he must apply for a travel pass. This Plaintiff has been forced to place monitoring devices on all of his phones and computers, endangering his employability at his current company.

**Doe 15**

Plaintiff Doe 15 accepted a plea agreement on January 25, 2013, pleading to one count of Luring Children or Mentally Ill Persons with Use of Technology with Intent to Engage In Sexual Conduct, on April 17, 2013. Doe 15 was sentenced to a term of probation and a special sentence of lifetime supervision. On December 30, 2013, Doe 15's probation was revoked and he was resentenced to a term of imprisonment in the Nevada Department of Corrections. Doe 15's Lifetime Supervision Agreement was activated on June 24, 2015. The restrictions have had a harsh and punitive effect on his ability to find a job. He is not allowed internet access all prospective jobs have required on line application. Doe 15's family lives in Arizona. His travel restrictions prevent him from visiting them and attending family functions. Doe 15 has a bartender's license but his curfew provision prevents him from working at night. The Doe 15 wants to return to Arizona where his friends, family and support system is but he is unable to move because of his current restrictions. Doe 15 cannot attend a movie, he cannot drink alcohol, and he cannot be in the same room with someone

28

under the age of eighteen unless an adult is present and with prior approval of his probation officer. Doe 15 is prohibited from possessing any device that has internet capability. He is subject to random searches and random polygraphs.

**Doe 16**

Plaintiff Doe 16 accepted a plea agreement on October 6, 2006. On June 30, 2005, Plaintiff Doe 16 was sentenced to probation and a special sentence of lifetime supervision. The residency and movement restrictions caused by his lifetime supervision have prevented him from relocating to live with his girlfriend and child in Colorado. He has also had occupational opportunities denied because of the restrictions imposed by the special sentence of lifetime supervision. He has been honorably discharged from counseling. He has been independently assessed as a low risk to reoffend. He has attended university and maintained a 3.9 grade average. Plaintiff Doe had his home searched and his computers taken as a result of his supervision. These actions have caused him to be unable to complete work and school work.

**FIRST CAUSE OF ACTION**
**Violation of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983**
**(Procedural Due Process)**

54**.**     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

55. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all Defendants.

56. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that the State shall not "deprive any person of life liberty, or property, without due process of law…." U.S. Const. amend. XIV, § 1.

57. Offenders on lifetime supervision do not obtain an adequate hearing on the conditions imposed by the Board in violation of the Due Process Clause of the Fourteenth Amendment.

58. Additionally, N.R.S. 213.1243 is void for vagueness because it fails to put offenders on notice as to any of the conditions imposed by the "program of lifetime supervision" in violation of the Due Process Clause of the Fourteenth Amendment.

59. Moreover, N.R.S. 213.1243 is void for vagueness because it fails to sufficiently define "a violation of a condition," since N.R.S. 213.1243 enumerates only four of the conditions that an offender could potentially violate pursuant to the program of lifetime supervision in violation of the Due Process Clause of the Fourteenth Amendment. These conditions only apply to a certain tier level offender.

60. Further, N.R.S. 213.1243 is void for vagueness because it grants unfettered discretion to the Board to create and impose the conditions of lifetime supervision in violation of the Due Process Clause of the Fourteenth Amendment.

61. Lastly, N.R.S. 213.1243 is void for vagueness because it encourages arbitrary and discriminatory enforcement by the Board to make the determination as to whether an offender committed "a violation of a condition imposed" by the program of lifetime supervision in violation of the Due Process Clause of the Fourteenth Amendment.

62. Accordingly, each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
### Violation of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983
### (Substantive Due Process)

63.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

64. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all Defendants.

65. The conditions imposed by the Board pursuant to N.R.S. 213.1243 infringe on Plaintiffs' fundamental rights to marry, travel, raise their children, and reside with their families in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

66. Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

## THIRD CAUSE OF ACTION
### Violation of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983
### (First Amendment)

67. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

31

68. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all Defendants.

69. The First Amendment protects the freedom of religion and right to assemble. U.S. Const. amend. I.

70. The First Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

71. The conditions imposed by the Board pursuant to N.R.S. 213.1243 prohibits Plaintiffs from attending religious services in violation of the Free Exercise Clause of the First Amendment as incorporated into the Due Process Clause of the Fourteenth Amendment.

72. Moreover, the conditions imposed by the Board pursuant to N.R.S. 213.1243 prohibits Plaintiffs from associating with certain people and in certain areas in violation of the freedom of association as guaranteed by the First Amendment as incorporated into the Due Process Clause of the Fourteenth Amendment.

73. Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

**FOURTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment to the United States Constitution under**
**42 U.S.C. § 1983**
**(Equal Protection)**

74. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

32

75. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all Defendants.

76. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "n[o]…State… [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

77. The conditions imposed by the Board pursuant to N.R.S. 213.1243 treats offenders prior to the enactment of N.R.S. 176.0931, N.R.S. 213.1243, and N.A.C. 213.290 differently than Plaintiffs i.e. offenders serving a special sentence of lifetime supervision after 1995 in violation of the Equal Protection Clause of the Fourteenth Amendment.

78. Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

## FIFTH CAUSE OF ACTION
**Violation of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983**
**(Cruel & Unusual Punishment)**

79. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

80. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all Defendants.

81. The Fourteenth Amendment to the U.S. Constitution incorporates the Eighth Amendment prohibition against the government inflicting cruel and unusual punishments. Robinson v. California, 370 U.S. 660, 667 (1962).

82. A violation of the conditions imposed by the Board pursuant to N.R.S. 213.1243 subjects an offender to another felony and a mandatory sentence of at least one to six years imprisonment and a discretionary fine not to exceed $5,000. The sentence received for a violation of a condition inflicts a sentence disproportionate to the actual condition violated.

83. Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

**SIXTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983**
**(Double Jeopardy)**

84. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

85. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

86. The Fifth Amendment to the U.S. Constitution provides that "no…person [shall] be subject for the same offense to be twice put in jeopardy of life or limb…."U.S. Const. amend. V.

87. The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Benton v. Maryland, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause prevents multiple punishments for the same crime. Lifetime Supervision is a multiple punishment.

34

88. Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

### SEVENTH CAUSE OF ACTION
**Violation of Article 1, Section 9 to the United States Constitution under
42 U.S.C. § 1983
(*Ex Post Facto*)**

89. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

90. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

91. The *Ex Post Facto* Clause of the United States Constitution provides that "No State shall…pass any ex post facto Law." U.S. Const. art. I, § 9.

92. Lifetime supervision and the conditions of lifetime supervision created by the Board pursuant to N.R.S. 213.1243, in effect, impose a new punishment on offenders by the government intruding and restricting Plaintiffs day to day life, in addition to rendering additional convictions and sentences for noncompliance. These punitive conditions did not exist in law when the Plaintiffs committed their offenses.

93.    Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

/ / /

/ / /

/ / /

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

### EIGHTH CAUSE OF ACTION
### Violation of Article 1, Section 10, Clause 1 to the United States Constitution under
### 42 U.S.C. § 1983
### (Contract Clause)

94. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

95. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

96. The Contract Clause of the United States Constitution provides that "No State shall…pass any…Law impairing the Obligation of Contracts. U.S. Const. art. I, § 10.

97. N.R.S. 213.1243 substantially impairs the terms of Plaintiffs' plea agreements by imposing conditions that did not and do not exist in any statute, including residency and movement restrictions. These conditions were never detailed in any of the Plaintiffs plea agreements because they simply did not exist at law. Nor could those conditions be known when said agreements were reached with the State of Nevada because they did not exist in law. Additionally, the conditions imposed by the Board pursuant to N.R.S. 213.1243 substantially impairs Plaintiffs' plea agreements considering the statute expressly states only four of the potentially twenty-five conditions imposed as conditions of lifetime supervision in violation of the Contract Clause to the United States and Nevada Constitutions.

98. Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

**NINTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment to the United States Constitution under**
**42 U.S.C. § 1983**
**(Separation of Powers)**

99. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

100.    Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

101.    N.R.S. 213.1243 violates the Separation of Powers doctrine by delegating the power to legislate to an executive agency without any intelligible standards and allowing the executive agency to interpret and apply the law infringing on both the legislative and judicial branches' powers granted under the United States and Nevada Constitutions.

102.    Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

**TENTH CAUSE OF ACTION**
**Violation of Article 1, Section 9 to the United States Constitution under**
**42 U.S.C. § 1983**
**(Bill of Attainder)**

103.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

104.    Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

37

105.   N.R.S. 213.1243 applies to ascertainable members of a group i.e. offenders on lifetime supervision, which allows the Board to inflict further  punishment without a judicial trial in violation of the Bill of Attainder Clause of the United States and Nevada Constitutions.

106.   Each of these constitutional violations has injured, or will imminently injure Plaintiffs, which entitles Plaintiffs to declaratory and injunctive relief.

### ELEVENTH CAUSE OF ACTION
### (Intentional or Fraudulent Misrepresentation)

107.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

108.   Plaintiffs reached plea agreements with the State of Nevada.

109.   The specific residency and movement requirements were that would be imposed were not explained to Plaintiffs, who only discovered them in an ex post facto manner.

110.   To induce this agreement Defendants made a false representation, by omission of the material fact that residency and movement restrictions would be imposed as a condition of their special sentence of lifetime supervision.

111.   This representation by omission was done with knowledge or belief that the representation by omission of the residency and movement restrictions was done to induce Plaintiffs to enter into a plea agreement.

112.   Plaintiffs justifiably relied on the representation and were damaged as a result of this reliance, by having residency and movement restrictions applied to them retroactively.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.   A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Due Process Clause of the United States Constitution (U.S. Const., Amend. XIV);

2.   A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Due Process Clause of the Nevada Constitution (Nev. Const., Art. 1, § 8, cl. 5);

3.   A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the First Amendment of the United States Constitution (U.S. Const. Amend. I);

4.   A declaration that N.R.S. 213.1243violate, both facially, and as applied by Defendants, the right to practice religion without governmental interference protected by the Nevada Constitution (Nev. Const., Art. 1 § 4, cl. 5);

5.   A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Equal Protection Clause of the United States Constitution (U.S. Const., Amend. IV);

6.   A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Equal Protection Clause guaranteed by the Nevada Constitution (Nev. Const., Art. 1, § 1);

7.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Cruel & Unusual Punishment Clause of the United States Constitution (U.S. Const. Amend. VIII);

8.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Cruel & Unusual Punishment Clause of the Nevada Constitution (Nev. Const., Art. 1, § 8, cl. 5);

9.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Double Jeopardy Clause of the United States Constitution (U.S. Const., Am. V, Am. XIV);

10.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Double Jeopardy Clause of the Nevada Constitution (Nev. Const., Art. 1, § 8, cl. 1);

11.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the *Ex Post Facto* Clause of the United States Constitution (U.S. Const., Art. 1, § 9, cl. 10);

12.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the *Ex Post Facto* Clause of the Nevada Constitution (Nev. Const., Art. 1, § 15);

13.      A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Contracts Clause of the United States Constitution (U.S. Const., Art. 1, § 10);

40

14.     A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Contacts Clause of the Nevada Constitution (Nev. Const., Art. 1, § 15);

15.     A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Separation of Powers Doctrine of the Nevada Constitution (Nev. Const., Art. 3, § 1, cl. 1);

16.     A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Bill of Attainder Clause of the United States Constitution (U.S. Const., Art. 1 § 9);

17.     A declaration that N.R.S. 213.1243 violates, both facially, and as applied by Defendants, the Bill of Attainder Clause of the Nevada Constitution (Nev. Const., Art. 1 § 15);

18.     A permanent injunction prohibiting each Defendant from enforcing N.R.S. 213.1243 against Plaintiffs;

19.     A declaration that Plaintiffs do not need to comply with the conditions imposed by the Board;

20.     An order directing that Defendants remove the conditions that form Plaintiffs' lifetime supervision agreements;

21.     An order directing the payment of reasonable attorney fees and costs; and

22.     For such other relief as this Court deems proper under these circumstances.

/ / /

/ / /

/ / /

41

1

<u>**DEMAND FOR JURY TRIAL**</u>

2

      Pursuant to F.R.C.P. Rule 38 and/or N.R.C.P. Rule 38, Plaintiff demands a trial by

3

jury on all causes of action raised in this Complaint.

4

      Respectfully submitted this 25th day of August, 2015.

5

                      By:    <u>*/s/* Gary A. Modafferi</u>

6

                      ROBERT M. DRASKOVICH
Nevada Bar. No. 6275

7

TURCO & DRASKOVICH, LLP
GARY A. MODAFFERI

8

Nevada Bar No. 12450
LAW OFFICES OF GARY A. MODFFERI

9

815 S. Casino Center Blvd.
Las Vegas, Nevada 89101

10

Telephone: (702) 474-4222

11

ALLEN LICHTENSTEIN, ESQ.
Nevada Bar No. 3992

12

3315 E. Russell Road
Las Vegas, Nevada 89120

13

(702) 433-2666
Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

42

24