1
2
3
4                   **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6                                  * * *
7    DOES 1-35,                              Case No. 2:15-cv-01638-RFB-DJA
8                          Plaintiff(s),                **ORDER**
9          v.
10   THE STATE OF NEVADA *ex rel. Aaron Ford,*
     *Attorney General of the State of Nevada*;
11   GEORGE TOGLIATTI, *Director of the Nevada*
     *Department of Public Safety*;
12   NATALIE WOOD, *Chief Parole and Probation*
     *Division of the Nevada Department of Public*
13   *Safety*; CHRISTOPHER DERICO; *Chair of the*
     *Nevada Board of Parole Commissioners*; *et al*
14
15                         Defendant(s).
16
           **I.      INTRODUCTION**
17
           Before the Court is Plaintiffs Does 1-35's ("Plaintiffs") Second Motion for Partial
18
     Summary Judgment. ECF No. 112. For the following reasons, the Court grants the motion.
19
           **II.     PROCEDURAL BACKGROUND**
20
            Plaintiffs filed their first Complaint on August 25, 2015. ECF No. 1. The complaint
21
22   challenges the retroactive application of movement and residency restrictions to Plaintiffs, who
23   are all registered sex offenders on several constitutional grounds, including the Ex Post Facto
24   Clause. On January 21, 2016, the parties stipulated to the dismissal of Defendants Lombardo,
25   Moers, and Perez. ECF Nos. 33, 34. On September 9, 2016, the Court granted Plaintiff leave to
26   file an amended complaint and dismissed a pending motion to dismiss without prejudice. ECF No.
27
28   42. Plaintiff filed the first amended Complaint on October 11, 2016. ECF No. 45. Defendants

Conmany, Laxalt, Wood, and Wright filed an Answer on October 25, 2016. ECF No. 32. On April 23, 2018, Plaintiffs filed a Motion for Partial Summary Judgment. ECF No. 68. Defendants responded on May 14, 2018. ECF No. 70. Plaintiffs replied on May 28, 2018. ECF No. 73.

On January 17, 2019, the Court denied the motions to dismiss/summary judgment and granted Plaintiffs leave to amend the complaint to add the State Board of Parole Commissioners. ECF No. 75. The Court also reopened discovery for 120 days. Plaintiff filed the operative second amended complaint on January 28, 2019. ECF No. 76. Defendants answered the amended complaint on March 5, 2019. ECF No. 94. A settlement conference occurred on June 25, 2019. A settlement was not reached. ECF No. 108. Plaintiffs Does 1-35 filed the instant second motion for summary judgment on September 16, 2019. ECF No. 112. A response and reply were filed. ECF Nos. 116, 118. On March 9, 2020, the Court heard oral argument on the motion. ECF No. 127. This written order now follows.

### III. FACTUAL BACKGROUND

#### a. Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiffs are registered sex offenders who have completed their sentences and are now subject to lifetime supervision status. Lifetime supervision status was created by the Nevada state legislature when it passed NRS 176.0931 in 1995. Nev. Rev. Stat. § 176.0931. In conjunction with NRS 176.0931, the State of Nevada passed NRS 213.1243. NRS 213.1243 grants the State Board of Parole Commissioners ("the Board") the authority to establish a program of lifetime supervision. Nev. Rev. Stat. § 213.1243.

In 2005, Nevada amended NRS 213.1243 to expressly state four conditions that apply to Tier 3 offenders. Nev. Rev. Stat. § 213.1243(4). In 2007, Nevada passed AB 579 and SB 471. The two laws amended NRS 213.1243 to impose a number of additional conditions that courts were

required to impose. AB 579 related to reclassification, registration, and notification. SB 471 imposed residence and movement restrictions and other conditions, to be effective as of October 1, 2007. Specifically, the law commands that sex offenders placed on lifetime supervision may not "knowingly be within 500 feet of any place" or reside anywhere "located within 1,000 feet of any place" that is "designed primarily for use by or for children." SB 471 §§ 8(3), (4). Of the various movement restrictions, the two most significant ones were those requiring Tier 3 offenders to live at least 500 or 1,000 feet away from areas where children could congregate.

In 2008, the District of Nevada held that the retroactive application of both AB 579 and S.B. 471 was unconstitutional. American Civil Liberties Union of Nevada v. Cortez-Masto, 719 F. Supp. 1258, 1260 (D. Nev. 2008). The Ninth Circuit reversed the District Court's finding as to AB 579, but found the issue of residency and movement restrictions under SB 471 moot in light of the State of Nevada's judicial admission that they would not retroactively impose SB 471's requirements. Am. Civil Liberties Union of Nevada v. Cortez-Masto, 670 F.3d 1046 (9th Cir. 2012).

On remand, at a status conference, Plaintiffs raised the issue that they continued to be subjected to identical movement restrictions. Defendants responded that they were exercising their general authority under NRS 213.1243 rather than the specific restrictions outlined in SB 471, and identified other statutes that it claimed gave it the authority to impose retroactive movement and residency restrictions. The District Court  determined that this issue was outside the scope of its earlier decision and encouraged Plaintiffs to file a new suit. Plaintiffs subsequently filed that new suit, this case, on August 25, 2015. In 2016, the Nevada Supreme Court ruled that the Parole Board could not impose conditions beyond those listed in NRS 213.1243. McNeill v. State, 375 P.3d

1022, 1025 (Nev. 2016). In response to <u>McNeil</u>, the Board issued a new order that sought to ensure that no restrictions were placed on offenders that was not already explicitly enumerated in <u>McNeill</u>.

In her deposition testimony Defendant Natalie Wood, Chief of Parole and Probation for the Division of Parole and Probation with the Department of Public Safety for the State of Nevada, testified that the Department will apply movement and residency restrictions to individuals whose crimes occurred prior to the relevant NRS 213.1243 amendments if it is determined to be in the public's interest for safety reasons.

Plaintiffs now seek a declaration from this Court that the retroactive application of movement and residency restrictions not explicitly enumerated in NRS 213.1243 at the time of their criminal offense is unconstitutional, and an injunction preventing Defendants from continuing to impose such restrictions.

### b. Disputed Facts

The Court finds there to be no disputed facts.

### IV.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322(1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. <u>Gonzalez v. City of Anaheim</u>, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for

trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. <u>Zetwick v. Cty. of Yolo</u>, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.    DISCUSSION

The Ex Post Facto Clause of the Constitution prohibits state and federal governments from "retroactively imposing additional punishments for commission of a criminal offense." <u>Am. Civil Liberties Union v. Masto</u>, 670 F.3d 1046, 1052 (9th Cir. 2012) (citing  U.S. Const. art. I, §§9, cl. 3). The Ex Post Facto Clause applies to laws, which means the Clause "reaches every form in which the legislative power of a state is exerted," including a "a regulation or order."' <u>Himes v. Thompson</u>, 336 F.3d 848, 854 (9th Cir. 2003); <u>Coles v.Bisbee</u>, 422 P.3d 718, 720 (Nev. 2018). To determine whether a law or regulation violates the Ex Post Facto Clause, the Court employs a two-step analysis. <u>Himes</u>, 336 F.3d at 854. First, the Court examines whether the regulation has been applied retroactively to the criminal offenders. <u>Id</u>. In determining retroactivity, the critical question is whether the "regulations change the legal consequences of acts completed before the effective date of the regulations." <u>Id</u>. (citing <u>Weaver</u>, 450 U.S. 24, 31 (1981)). Thus, retroactivity is measured from date of the criminal offense, rather than date of conviction. <u>Masto</u>, 670 F.3d at 1062.  Second, the Court determines whether the regulations create a "sufficient risk" of increasing the punishment attached to the offender's crimes. <u>Himes</u>, 336 F.3d at 855.

The Court finds that the movement and residency restrictions, to the extent that they are applied to Plaintiffs[1] who committed their criminal offenses before movement and residency restrictions were added to NRS 213.1243, are retroactive. Defendant Natalie Wood states in her deposition that such actions are not retroactive, because typically such restrictions will only apply if an individual on lifetime supervision seeks to move to a new residence for which the rules

---

[1] Some plaintiffs committed their criminal offenses after October 1, 2007.

1    requiring the 500 or 1000 feet restriction may apply. But this is still retroactive application—the

2    offender is a facing a legal consequence that would not have applied on the date that their criminal

3    offense was committed. Furthermore, Defendants have offered no evidence of any statutory

4    authority to impose such restrictions retroactively. Defendants were specifically asked during oral

5    argument to identify such statutory authority, but no statutes were provided.[2] The Parole Board

6    does not have unbridled authority to impose additional conditions absent clear legislative authority

7    and guidelines to do so, as the Nevada Supreme Court explicitly found in McNeill. 375 P.3d at

8    1026. The restrictions are retroactive.

9        The Court also finds that the restrictions increase the risk of additional punishment to

10   plaintiffs for their crimes. The Ninth Circuit has articulated the following factors for the Court to

11   consider when determining whether regulations are punitive:

13        "When classifying a measure as either punitive or civil, courts generally consider the
          following factors: (1) whether the sanction involves an affirmative disability or restraint;
14        (2) whether it has historically been regarded as a punishment; (3) whether it comes into
          play only on a finding of scienter; (4) whether its operation will promote the traditional
15        aims of punishment—retribution and deterrence; (5) whether the behavior to which it
          applies is already a crime; (6) whether an alternative purpose to which it may rationally be
16        connected is assignable for it; and (7) whether it appears excessive in relation to the
          alternative purpose assigned." Maciel v. Cate, 731 F.3d 928, 937 (9th Cir. 2013).
17

19   The Ninth Circuit has not explicitly ruled on whether or not movement and residency restrictions

20   for sex offenders are punitive. In Maciel, the Ninth Circuit found that the question was

21   insufficiently "clearly established" for purposes of granting a writ of habeas corpus. Id. at 937. In

22   light of the lack of clear guidance from the Ninth Circuit, the Court will proceed with its own

23   analysis under Maciel.

24        First, residency restrictions are undoubtedly a restraint on a person's liberty. Residency

25   restrictions can "impose significant—even extreme—restrictions on [a person's liberty]." United

26   States v. Collins, 684 F.3d 873, 890 (9th Cir. 2012). The Ninth Circuit has previously recognized

28   _____

     [2] Defendants had previously argued that they had statutory authority under NRS 213.1245, NRS
     213.110, and NRS 213.12175 but abandoned that argument in the briefs on this motion.

                                                    - 2 -

1    that restrictions such as the ones at issue here, which allow the Board to restrict people from living

2    within  1,000 feet of schools or other places where children may be present, subject offenders to a

3    state of "constant eviction," "because there are no guarantees a school or daycare will not open up

4    within 1,000 feet of anywhere." United States v. Rudd, 662 F.3d 1257, 1264 (9th Cir. 2011).

5          The Court does not find that residency restrictions are per se a historical form of

6    punishment. The Eighth Circuit examined this factor in the context of residency restrictions and

7    noted that residency restrictions are distinct from historical forms of geographical restrictions such

8    as banishment, and because such residency restrictions are new and somewhat unique, could not

9    be considered a traditional kind of punishment. Doe v. Miller, 405 F.3d 700, 719–20 (8th Cir.

10   2005).

11         Next, Nevada's residency restrictions apply only to people who are considered Tier 3

12   offenders, which includes crimes for sexual abuse, lewdness or luring of a child with mental

13   illness.[3] All of those offenses require scienter, which leans toward a finding that the restrictions

14   are punitive. Kansas v. Hendricks, 521 U.S. 346, 362 (1997).

15         The next factor the Court considers is whether the restrictions meet the traditional twin

16   aims of punishment: retribution and deterrence. The Court finds that the restrictions do have a

17   deterrent effect, as they significantly reduce the liberty of those who are subject to them and are

18   directed toward reducing the possibility of future similar crimes. The Court cannot say that the

19   restrictions are clearly retributive. Defendants' witness, Natalie Wood of the Department of Public

20   Safety, continually categorizes the movement and residency restrictions as a matter of public safety

21   in her deposition. The Court finds that the restriction is both retributive and regulatory. Like the

22   Eighth Circuit in Doe, the Court finds that "[w]hile any restraint or requirement imposed on those

23   who commit crimes is at least potentially retributive in effect, the [movement restriction] is

24   consistent with the legislature's regulatory objective of protecting the health and safety of

25   children." Doe, 405 F.3d at 720. The behavior to which the restrictions apply is already a crime,

26   which leans toward a finding that the act is punitive. Hatton v. Bonner, 356 F.3d 955, 965 – 66

27   (9th Cir. 2004).

28

---

[3] The requirements for being deemed a Tier 3 offender are at NRS 213.1243(5).

1    Whether there is a rational purpose for the movement restrictions, and whether those

2    restrictions are excessive in relation to the purpose for which they are designed, is the most

3    important factor to consider. Smith v. Doe, 538 U.S. 84, 102 (2003). There is a rational purpose

4    for the movement restrictions,—the restrictions are related to the rational purpose of protecting

5    children from predation by sex offenders. When determining whether the restrictions are

6    excessive, the Court must consider whether the regulation is "[un]reasonable in light of [its]

7    nonpunitive objective." Smith, 538 U.S. at 105. The Court finds that the restrictions are

8    unreasonable in light of their purported nonpunitive objective. The restrictions do not appear to

9    make any individualized assessment of recidivism and instead appear solely concerned with an

10   overbroad conception of public safety. There is no differentiation between the sites where children

11   could congregate; rather, it is a broad category with no clear public demarcation leading to an

12   overly broad and expansive restriction—"any place" that is "designed primarily for use by or for

13   children." While this does not necessarily make such measures excessive, they are a factor that the

14   Court may consider, and the Court finds that they are excessive in this case. See Doe v. Miami-

15   Dade County, Florida, 846 F.3d 1180, 1185 – 86 (11th Cir. 2017) (finding plaintiffs had plausibly

16   pled Ex Post Facto challenge to residency restrictions that were categorical and did not account

17   for individualized risk).

18   Accordingly, because the Court finds that the movement and residency restrictions are both

19   retroactive and punitive, the Court finds that the use of such movement and residency restrictions

20   is unconstitutional.

21   Defendants spend the majority of their briefing addressing the issue of qualified and

22   discretionary immunity. But qualified immunity is not available for prospective injunctive relief.

23   See Hydrick v. Hunter, 669 F.3d 937, 939–40 (9th Cir. 2012) ("Qualified immunity is only an

24   immunity from a suit for money damages, and does not provide immunity from a suit seeking

25   declaratory or injunctive relief."). While the Nevada Supreme Court has not explicitly held the

26   same for discretionary immunity, the Ninth Circuit has held that discretionary function immunity

27   does not apply to violations of the Constitution or the False Tort Claims Act, from which Nevada's

28   discretionary act immunity statute is derived. See Nurse v. United States, 226 F.3d 996, 1002 (9th

Cir. 2000) (noting that even though generally policies are subject to discretionary act immunity, "governmental conduct cannot be discretionary if it violates a legal mandate"); Martinez v. Maruszczack, 168 P.3d 720, 727 (Nev. 2007).

Defendants also argue that the only cognizable harm to Plaintiffs that could have occurred would necessarily only have happened after 2016, when the Nevada Supreme Court decided McNeil, because before then Defendants did not have notice that their actions in imposing these movement and residency restrictions were unconstitutional. But such a consideration is irrelevant to what Plaintiffs seek from this partial summary judgment motion, which is declaratory and injunctive relief that prevents the *current and future* application of such restrictions to Plaintiffs.

Finally, the Court finds that Defendants are judicially estopped in this case. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1213 (9th Cir. 2016). Judicial estoppel may apply when 1) a party's later position is clearly inconsistent with an earlier position, 2) the party succeeded in persuading a court to accept a party's earlier position, and 3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 751 (2001).

Here, the Ninth Circuit refused to rule on the question of whether the movement and residency restrictions under SB 471 applied retroactively based on Defendants' sworn admission that they would not apply the restrictions retroactively. When finding the issue moot, the Ninth Circuit explicitly noted that, "[t]he State represented, as a matter of law, that it had no authority under SB 471 to apply its movement and residency restrictions retroactively and that it will 'absolutely' not do so in the future." Masto, 670 F.3d at 1064–65. Defendants then proceeded to do exactly what it had told the Ninth Circuit it would not do and applied the residency restrictions to Plaintiffs, with the flimsy justification that Defendants no longer applied the restrictions under the ambit of SB 471, but under other statutes. Then, after Plaintiffs pointed out the fact that the statutes Defendants cited did not actually give Defendants the authority to implement the movement and residency restrictions retroactively, Defendants asserted that they applied the

restrictions pursuant to the Board's general authority. The  Nevada Supreme Court subsequently rejected that argument in <u>McNeil</u>. The Court finds that Defendants' representation to the Ninth Circuit that it would not apply the residency restrictions of SB 471 to Plaintiffs was a position from which Defendants were judicially estopped from changing. Defendants convinced the Ninth Circuit to deem the issue moot based on their representations that they would not apply the restrictions to Plaintiffs. Their change in position was undisputedly to the detriment of Plaintiffs, who were deprived of an opportunity for the Ninth Circuit to squarely address the issue based on Defendants' representations.

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Second Motion for Partial Summary Judgment (ECF No. 112) is GRANTED. The Court declares that the application of movement and residency restrictions not specifically set forth in NRS 213.1243 to any plaintiff whose last criminal offense predated October 1, 2007 violates the Ex Post Facto Clause and is therefore unconstitutional.

**IT IS FURTHER ORDERED** that Defendants are permanently enjoined from retroactively enforcing any condition of lifetime supervision not specifically set forth in NRS 213.1243 before October 1, 2007 to any plaintiffs who meet the following conditions:

1. The plaintiff's last relevant criminal offense occurred before October 1, 2007.
2. A "relevant" criminal offense is any offense that would trigger the movement and residency restrictions of SB 471.

**IT IS FURTHER ORDERED** that Defendants' Motion for Supplemental Briefing (ECF NO. 134) is GRANTED. Defendants shall file a motion for summary judgment on qualified immunity by October 30, 2020. Plaintiffs may file a response by November 13, 2020. Defendants may reply by November 20, 2020.

DATED: September 29, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**