# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DOES 1-35; and UNKNOWN NAMED DOES 1-1000,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM PAUL LAXALT, Attorney General of the State of Nevada, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-01638-RFB-DJA<br><br>**ORDER** |

## I.  INTRODUCTION

Before the Court are a number of motions, most notably a motion for interim attorney fees. ECF No 166. This is a section 1983 civil rights action filed by multiple plaintiffs, who are all registered sex offenders, in which they challenge the retroactive application of movement and residency restrictions that stem from Nevada Senate Bill 471 on several constitutional grounds, including the Ex Post Facto Clause.

## II.  PROCEDURAL BACKGROUND

The Court incorporates the background section herein from its previous orders, ECF Nos. 148, 156, and 165, and repeats and emphasizes the following:

Plaintiff filed the operative Second Amended Complaint on January 28, 2019. ECF No. 76. Plaintiffs filed a motion for partial summary judgment on September 16, 2019. ECF No. 112. On September 14, 2020, Defendants filed a motion for summary judgment on qualified immunity. ECF No. 145. The Court granted Plaintiffs' motion for partial summary judgment on September

29, 2020. ECF No. 148. Defendants filed a motion to alter or amend this Order on October 23, 2020. ECF No. 149. On September 30, 2021, the Court denied Defendants' motion for summary judgment. ECF No. 156. The Court also granted in part Defendants' motion to alter or amend the Court's September 29, 2020, Order. Id. The Court vacated the injunction issued in its prior Order and issued a more precise injunction. Id.

On October 26, 2021, Defendants moved to alter or amend the Court's September 30, 2021, Order denying their motion for summary judgment. ECF No. 156. On March 31, 2024, the Court granted Defendants' motion to alter or amend the Court's September 30, 2021, struck its prior Order as to its denial of Defendants' motion for summary judgment on qualified immunity, and granted Defendant's motion for summary judgment on qualified immunity solely as to Defendant DeRicco. ECF No. 165.

On April 25, 2024, Plaintiffs filed the instant motion for an interim award of reasonable attorneys' fees. ECF No. 166. Defendants responded. ECF No. 176. Plaintiffs replied, ECF No. 181, and Defendants filed a motion to disregard the Plaintiffs' reply, ECF No. 183. Plaintiffs then responded to that motion. ECF No. 188.

This Order follows.

### III.    FACTUAL BACKGROUND

The Court incorporates by reference the undisputed facts in its prior Orders, ECF Nos. 148, 165, and repeats and emphasizes the following:

Plaintiffs are registered sex offenders who have completed their sentences and are now subject to lifetime supervision status. In 1995, the Nevada state legislature passed NRS 176.0931, which created a system of lifetime supervision for sex offenders. Nev. Rev. Stat. § 176.0931. In conjunction with NRS 176.0931, the State of Nevada passed NRS 213.1243, which grants the State Board of Parole Commissioners the authority to establish a program of lifetime supervision. Nev. Rev. Stat. § 213.1243.2.

In 2007, Nevada passed AB 579 and SB 471. The two laws amended NRS 213.1243 to impose a number of additional conditions that courts were required to implement. AB 579 related to reclassification, registration, and notification. SB 471 imposed residency and movement

1  restrictions. Specifically, SB 471 commanded that sex offenders placed on lifetime supervision may not "knowingly be within 500 feet of any place" or reside anywhere "located within 1,000 feet of any place" that is "designed primarily for use by or for children." SB 471 §§ 8(3), (4). The relevant provisions of SB 471 went into effect October 1, 2007.

In 2008, the Honorable James C. Mahan, United States District Judge, held that the retroactive application of both AB 579 and SB 471 was unconstitutional. Am. C.L. Union of Nevada v. Cortez Masto, 719 F. Supp. 1258, 1260 (D. Nev. 2008) ("Masto I"). The Ninth Circuit reversed the district court's finding as to AB 579, but found the issue of residency and movement restrictions under SB 471 moot in light of the State of Nevada's judicial admission that they would not retroactively impose SB 471's requirements. Am. C.L. Union of Nevada v. Cortez Masto, 670 F.3d 1046 (9th Cir. 2012) ("Masto II"). On remand, at a status conference, Plaintiffs raised the issue that they continued to be subjected to identical movement restrictions as those imposed by SB 471. Defendants responded that they were exercising their general authority under NRS 213.1243 rather than the specific restrictions outlined in SB 471. Plaintiffs filed the instant action on August 25, 2015. ECF No. 1. The next year, the Nevada Supreme Court ruled that the Parole Board could not impose conditions beyond those listed in NRS 213.1243. McNeill v. State, 375 P.2d 1022 (Nev. 2016). In response, Plaintiffs sought a declaration from this Court that the retroactive application of movement and residency restrictions not explicitly enumerated in NRS 213.1243 at the time of their criminal offense is unconstitutional, and an injunction preventing Defendants from continuing to impose such restrictions. The Court granted them this relief. ECF Nos. 148, 156.

## IV. LEGAL STANDARD

As the parties agree, 42 U.S.C. § 1988(b) authorizes an attorneys' fees award to a party who prevails on a claim brought pursuant to 42 U.S.C. § 1983. For purposes of attorneys' fees, a plaintiff may be considered the "prevailing party" if they succeed on "any significant issue in litigation which achieves some of the benefit they sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 443 (1983).

## V. DISCUSSION

**A. Motion for Interim Attorneys' Fees**

The Court now turns to the merits of the motions. Plaintiffs assert that they are the prevailing parties in this action and are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988. Plaintiffs request that the court award $1,053,595.00 in attorneys' fees.

In response, Defendants do not dispute that Plaintiffs are the prevailing parties in this action or that Plaintiffs may recover reasonable attorneys' fees. However, Defendants contend that the requested fees are unreasonable because: (1) Plaintiffs requested hourly rates are out of line with prevailing local rates; (2) Plaintiffs failed to certify that counsel reviewed the entries submitted to exclude unreasonable, duplicative, or wasteful billing;[1] (3) Plaintiffs billed more than 800 more hours than Defendants, employing three attorneys while Defendants have been represented by one attorney; (4) an analysis of the billing records shows that Plaintiffs' attorneys engaged in redundant block billing; (5) Plaintiffs' attorneys double- or triple-billed for routine or minor tasks.

Here, it is undisputed that Plaintiffs are the prevailing parties for the purposes of the fee request. Specifically, the Plaintiffs prevailed, in significant part, in their claims by receiving a permanent injunction against Defendants from this Court. The Court, therefore, turns to the lodestar analysis to determine the reasonable fees that Plaintiffs may recover.

### i. Reasonable Rates

In the Ninth Circuit, the proper method for determining reasonable attorneys' fees is to use the lodestar method. First, the trial court calculates attorneys' fees by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). This determination is made by examining the prevailing market rates in the relevant community charged for similar services by "lawyers of reasonably comparable skill, experience and reputation." Hensley, 461 U.S. at 433. The "relevant community" for these

---

[1] Pursuant to Local Rule 54-14(b), "[e]ach motion [for attorney fees] must be accompanied by an affidavit from the attorney responsible for the billings in the case authenticating the information contained in the motion and confirming that the bill was reviewed and edited and that the fees and costs charged are reasonable." In their Reply, Plaintiffs provided the affidavit required by Local Rule 54-14(b).

purposes is the district in which the lawsuit proceeds. Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

"Importantly, the fee applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these standards." Gonzalez v. City of Maywood, 729 F.3d 1196, 1206 (9th Cir. 2013). Once the fee applicant has met its burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates, 987 F.2d at 1397.

Here, Plaintiffs have submitted three affidavits from Plaintiffs' attorneys. One of them, for Allen Lichtenstein, made no reference to rates, though the motion itself provides that he is seeking a billing rate of $550 per hour. Gary Modafferi's declaration states that he usually bills $650 an hour, but is seeking a billing rate of $550 per hour in this case. Finally, Robert M. Draskovitch states that his billing rate since 2020 is $750 per hour, though he seeks a billing rate of $600 per hour in this case. While their declarations do detail their experience and accolades, none of them attest to prevailing fees in the community, nor do they provide any "evidence that their requested fees are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110 (9th Cir. 2014). However, Plaintiffs' counsel also provided a declaration in conjunction with their Reply. In that declaration, attorney Dennis L. Kennedy, states that he reviewed district court opinions, the 2023 Rate Survey of Business Litigators Based in Clark County, Nevada, and his own "personal knowledge of the market and the rates." With this additional declaration, Plaintiffs have met their burden of demonstrating that the requested rates are reasonable. The Ninth Circuit has instructed that "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (citing United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990)).

The Court's own review of recent decisions in this district further supports Plaintiffs'

proposed rates. See Christensen v. Stevedoring Services of Am., 557 F.3d 1049, 1055 (9th Cir. 2009) (finding that a fee award should be "based on current rather than merely historical market conditions"). Plaintiffs propose hourly rates for their attorneys, whose legal careers have spanned 27 years (Mr. Draskovich), 34 years (Mr. Lichtenstein), and 41 years (Mr. Modafferi), respectively, from $550 to $600. This is line with what courts in this district have recently found reasonable for attorneys with similar experience. See WSOU Invs., LLC v. Salesforce, Inc., No. 3:23-cv-00023-RCJ-CSD, 2024 WL 307617, at *4 (D. Nev. Jan. 26, 2024) (reviewing cases and finding that "hourly rates of $550 to $750 have recently been found reasonable for attorneys with 38 or more years of experience," while hourly rates of $500 to $641 have been approved for attorneys with between 17 and 38 years of experience).[2] Based on rates recently approved within this district and the Court's own familiarity with prevailing rates in the community, and taking into account the experience of the attorneys in this case and the relatively complexity of the matter, the Court finds the requested rates are reasonable.

### ii. Kerr Factors

In setting the rate, the Court also should consider the factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975). The Kerr factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

---

[2] See also Flynn v. Love, 3:19-cv-00239-MMD-CLB, 2022 WL 2918989, at *3 (D. Nev. July 25, 2022) ($550 for attorney with 40 years of experience); Boca Park Marketplace Syndications Group, LLC v. Ross Dress for Less, Inc., No. 2:16-cv-01197-RFB-BNW, 2020 WL 2892586, at *3 (D. Nev. May 31, 2020) ($750 for attorney with for 38 years of experience); Kurian v. SNAPS Holding Co., 2023 WL 7014963, at *2 (D. Nev. Oct. 24, 2023) (rate of $525 for attorney with 38 years of experience); Winecup Gamble, Inc. v. Gordon Ranch, LP, No. 3:17-cv-00163-RCJ-WGC, 2021 WL 434201, at *4 (D. Nev. February 8, 2021) ($641 for attorney with over 30 years of experience); Leftenant v. Blackmon, No. 2:18-cv-01948-EJY, 2022 WL 605344, at *1 (D. Nev. Feb. 28, 2022) ($500 for attorney with 30 years of experience); Wunderlich v. State Farm Mut. Auto. Ins. Co., No. 2:21-cv-00486-JAD-EJY, 2021 WL 6138236, at *2 (D. Nev. Dec. 28, 2021) ($550 for attorney with 30 years of experience); Smith & Wesson Brands, Inc. v. SW North America, Inc., No. 2:22-cv-01773-JCM-EJY, 2023 WL 7279950, at *3 (D. Nev. Nov. 3, 2023) ($550 for attorney with over 25 years of experience); Baluma S.A. v. Davydov, No. 2:20-cv-1552-KJD-NJK, 2023 WL 2843668, at *2 (D. Nev. Mar. 20, 2023) ($525 for partners).

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id.

Here, Plaintiffs have sufficiently argued that the length of the case, the novelty of the issue, the skill required for this case, the contingency fee, the experience of the attorneys, and the importance of the issue weigh in their favor. On balance, the Court finds that the relevant Kerr factors counsel setting Plaintiffs' rates at amounts that are relatively high for the market. Once again, the Plaintiffs' proposed rates are justified under the circumstances of this case.

### iii. Reasonable Hours

After deciding the appropriate hourly rate, the district court must then examine the fee applicant's contemporaneously recorded billing records and exclude from the lodestar amount hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The district court can reduce the hours in an attorney's fee application through one of two methods. "First, the court may conduct an hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party." Gonzalez, 729 F.3d at 1203 (internal quotation marks omitted). Second, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." Gates, 987 F.2d at 1399 (internal quotation marks omitted). Then, in appropriate cases, the district court may adjust the lodestar figure based upon the Kerr factors that were not subsumed into the initial lodestar calculation. McGrath v. Cnty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in "rare and exceptional cases." Van Gerwen v. Guar. Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted).

Defendants raise several issues with the number of hours that Plaintiffs billed, including that Plaintiffs engaged in redundant block billing and that Plaintiffs double- or triple-billed for

routine or minor tasks. Block billing is "legitimate grounds for reducing or eliminating certain claimed hours, but not for denying all fees." Mendez v. Cty. of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008), overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014). Further, "plaintiff's counsel can meet its burden" regarding documented hours, "by simply listing his hours and 'identifying the general subject matter of his time expenditures.'" Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (internal citation omitted). Here, while the Plaintiffs do include block-billing, the records are detailed enough to ascertain the nature of the task. However, several entries do show duplicative work,[3] or an excessive amount of time spent on tasks such as reviewing the docket, or filing documents.[4]

Generally, "the district court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." Chaudhry, 751 F.3d at 1111. However, courts may reduce, "lodestar hours for a variety of reasons, including duplicative work and vague time sheet entries," and "excessive time[.]" In re: Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1298 (9th Cir. 1994); Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing). Accordingly, due to the instances of duplicative or unnecessary work, the Court adjusts the number of hours that may reasonably factor into the attorneys' fees award by reducing the total amount by 5%. Therefore, the total amount that Plaintiffs' counsel should receive is: $1,000,915.25.

**B. Motion to Disregard in Part**

---

[3] For example, Mr. Draskovitch double-billed a July 2015 intake conference with Doe 10, as well as an extension of time in October 2015. Mr. Lichtenstein double-billed that same October 2015 extension.

[4] Three attorneys billed to "[r]eview & evaluate assign Judges in Civil Case," three attorneys billed to review a series of returned summons, three attorneys billed to review a November 2015 extension request, three attorneys billed to review an August 2015 certificate of interested parties, two attorneys billed to "[r]eview & evaluate" an October 2015 "terminated stipulation," three attorneys billed to review a September 2016 attorney substitution motion, three attorneys billed to review a November 2017 stipulation, three attorneys billed to review a December 2017 status report, three attorneys billed to review filings related to a January 2018 extension, three attorneys billed to review a March 2018 status report, three attorneys billed to review a January 2019 order resetting hearings, three attorneys billed to review summons issued in February 2019, three attorneys billed to review a February 2019 scheduling order, and three attorneys billed to review a March 2019 stipulation.

Defendants filed a motion to disregard in part Plaintiff's reply, which provides the affidavit required pursuant to Local Rule 54-14(b) and a declaration from attorney Dennis Kennedy in support of the reasonable rates. The Ninth Circuit has held that parties cannot raise a new issue for the first time in their Reply. See Thompson v. C.I.R., 631 F.2d 642 (9th Cir. 1980). Where new evidence is presented in a reply, the district should either not consider the new evidence, or not consider it without giving the other party the opportunity to respond. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996). However, where evidence is "submitted in direct response to proof adduced in opposition to a motion" it is not "new." Edwards v. Toys "R" Us., 527 F. Supp.2d 1197, 1205 n.31 (C.D. Cal. 2007) (citing Terrell v. Contra Costa Cnty. 232 Fed. Appx. 626, 629 n.2 (9th Cir. 2007)). Here, the affidavit and declaration provided by Plaintiffs concern the same information provided in the motion for interim attorney fees. Therefore, the Court denies the motion to disregard.

### C. Motion to Stay

On January 28, 2025, Defendants filed a motion for a settlement conference and a motion to stay the case. ECF Nos. 196-197. These motions were briefed by February 7. ECF Nos. 203, 205. The Court held a Calendar Call on February 18. ECF No. 216. For the reasons articulated on the record and incorporated by reference herein, the Court denied the motion for a settlement conference. The Defendants' motion to stay was in order to allow the parties to proceed to settlement. Since their request for a settlement conference has already been denied, the Court finds that there is no justification for the corresponding motion to stay. Therefore, the Court denies Defendants' motion to stay the case.

### D. Motion Requesting Leave of the Court to File a Reply to Defendants' Response to Plaintiffs' Motion in Limine

During the Court's February 18, 2025, Calendar Call, the Court denied Plaintiff's motion *in limine*, which sought to prevent Defendants from raising arguments related to personal participation and causation at trial. ECF No. 216. In reaching this decision, the Court considered the parties filings, including Plaintiffs' Reply. Therefore, the Court grants Plaintiffs' motion requesting leave to file their Reply.

### VI.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' motion for attorney fees, (ECF No. 166), is **GRANTED** in part. Plaintiffs are entitled to a fee award of $1,000,915.25.

**IT IS FURTHER ORDERED** that Defendants' motion to disregard in part Plaintiffs' reply, (ECF No. 183), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to stay, (ECF No. 197), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file a reply, (ECF No. 208), is **GRANTED**.

**DATED:** March 31, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**