**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

DOES 1-35; and UNKNOWN NAMED DOES 1-1000,

Plaintiffs,

v.

ADAM PAUL LAXALT, Attorney General of the State of Nevada, *et al.*,

Defendants.

Case No. 2:15-cv-01638-RFB-DJA

**ORDER**

## I.    INTRODUCTION

Before the Court is an evidentiary issue related to Plaintiffs' effort to introduce additional witnesses and exhibits for trial. This is a section 1983 civil rights action filed by multiple plaintiffs, who are all registered sex offenders, in which they challenge the retroactive application of movement and residency restrictions that stem from Nevada Senate Bill 471 on several constitutional grounds, including the Ex Post Facto Clause.

## II.    RELEVANT BACKGROUND

The Court incorporates by reference the facts and procedural history as iterated in its previous orders, ECF Nos. 148, 156, and 165, and emphasizes the following:

Plaintiffs filed their first Complaint on August 25, 2015 (ECF No. 1) and their First Amended Complaint on October 11, 2016. ECF No. 45. Plaintiffs then filed a proposed discovery plan and scheduling order on February 21, 2017, which was approved by Judge Carl W. Hoffman the next day, with discovery due by April 24, 2017. ECF Nos. 50–51. Following a series of stipulations, discovery was extended to April 23, 2018 (90 days after the Court's January 23, 2018

(ECF No. 64)). See ECF Nos. 53, 55, 59, 63, 64. During a January 17, 2019, motion hearing, the Court reopened discovery for an additional 120 days. ECF No. 75. Plaintiffs then filed the operative Second Amended Complaint on January 28, 2019. ECF No. 76. On February 8, Defendants filed a Second Proposed Discovery Plan/Scheduling Order (ECF No. 79), which was approved the next day. See ECF No. 80. Discovery was accordingly due by May 17, 2019. Id.

On March 31, 2024, the Court issued an Order instructing the parties to meet and confer to determine which Plaintiffs were eligible to proceed to trial on Plaintiffs' requests for damages. ECF No. 165. On April 29, the parties filed a joint status report that listed the Does that would be proceeding to trial. See ECF No. 167. The parties then filed a stipulation to strike that joint status report because it was filed without the Defendants' authorization. See ECF No. 172. Parties were then ordered to file a new status report by May 17. See ECF No. 173. On May 29, the parties filed the amended status report identifying nineteen plaintiffs who they agreed were eligible for the relief outlined in the Court's prior orders. ECF No. 175.

During a May 30, 2024, status conference, the parties were ordered to file a Proposed Joint Pretrial Order by July 17, 2024. ECF No. 182. Following two stipulations, see ECF Nos. 184, 185, 189, 190, Plaintiffs filed the Joint Proposed Pretrial Order on September 11, 2024. ECF No. 193. On January 14, 2025, the Court set the calendar call for February 18 and the trial for March 10. ECF No. 195. On February 14, Defendants filed their witness list, exhibit list, and trial brief. ECF Nos. 210, 211, 212. In the following days, Plaintiffs filed their statement of the case and their witness list. ECF Nos. 213–214. On February 18, the Court held a calendar call. ECF No. 216. Plaintiffs filed their exhibit list on February 25. ECF No. 215. On March 7, Plaintiffs filed a stipulation concerning the withdrawal of exhibits as well as a motion to substitute a deceased plaintiff. ECF Nos. 217–218.

The trial began with witness Terry Green on March 10, 2025. ECF No. 220. On March 11, the Plaintiffs submitted an addendum to their exhibit list and a further amended proposed addendum to the exhibit list. ECF Nos. 221–222. No witnesses were heard on the second day of trial. ECF No. 223. On the third day of trial, the Court heard from the following witnesses: Terry Green, Tania Scott (aka Tania Gates), Joshua Crow, Joseph Defuria, Barty Scott and Dwight

- 2 -

Bellard. ECF No. 224. On the fourth day of trial, the Court heard from the following witnesses: Jerrod Updike, Kristian Prestholm, Frank Burns, Marco Reid, David Banuelos, Julian Grijalva and Mario Jetton. ECF No. 225. And on the fifth day of trial, the Court heard from the following witnesses: Ruben Diaz, Eddie Ridenouer and Donald White. ECF No. 226. The Court denied the Motion to Substitute (ECF No. 218) as moot. ECF No. 227.

The continuation of the bench trial was set for March 24. ECF No. 228. On March 24, the Court held the sixth day of the bench trial and heard from George Rosenthal, Gonzalo Ramos Lopez and Eric Archuleta. ECF No. 231. The Court held the seventh and last day of the bench trial on May 16. The Court heard from the following witnesses at that time: John Stewart Kanipe, Natalie Wood, Adam Endel and Tony Corda. ECF No. 244.

This Order follows.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the discovery process and mandates that the parties initially disclose potential witnesses without awaiting a discovery request. Specifically, under Rule 26(a)(1)(A)(i), a party must disclose the name and, if known, the contact information of each individual likely to have discoverable information that the party may use to support its claims. Compliance with Rule 26's disclosure requirements is "mandatory." Republic of Ecuador v. Mackay, 742 F.3d 860, 865 (9th Cir. 2014).

While a party must make these disclosures "based on the information then reasonably available to it," Rule 26(e) imposes an ongoing duty on the party to supplement that information when the "party learns that the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

Finally, Rule 26(a)(1)(A)(ii) places an affirmative duty on litigants to provide "a copy—or a description of category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." These disclosures

must be "in writing, signed, and served" unless the Court orders otherwise. Fed. R. Civ. P. 26(a)(4).

In turn, Rule 37 "gives teeth to these requirements," enabling the court to sanction the non-disclosing party by "forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed," Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001), and, in some cases, dismissing the proceeding. Fed. R. Civ. P. 3(c)(1); 37(b)(2)(A)(i)–(vi). The exclusion of improperly disclosed evidence has been characterized as "automatic": "[t]he automatic nature of the rule's application does not mean that a district court must exclude evidence that runs afoul of Rule 26(a) or (e)." Merchant v. Corizon Health, Inc., 993 F.3d 733, 740 (9th Cir. 2021). "Rather, the rule is automatic in the sense that a district court may properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." Id.

To determine whether a failure to disclose was substantially justified or harmless, courts consider the following factors: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003). The burden is upon the disclosing party to show that the failure to disclose was justified or harmless. Yeti, 259 F.3d at 1107.

Additionally, where the exclusionary sanction amounts to dismissal, the Court must undertake a five-factor analysis: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997). Finally, before issuing a sanction that amounts to dismissal, courts must consider whether the failure to disclose involved "willfulness or bad faith." R & R Sails, Inc. v. Ins. Co. of Pennsylvania, 673 F.3d 1240, 1247 (9th Cir. 2012).

## IV. DISCUSSION

### A. Undisclosed Witnesses

First, Plaintiffs seek to call Defendants Natalie Wood, Adam Endel, and Tony Corda as part of their case in chief. Defendants argue that Plaintiffs did not list these witnesses in the Joint Pretrial Order, their witness list, or their trial brief. Therefore, Defendants argue that Plaintiffs should be foreclosed from calling the witnesses.

"A court may exclude testimony from witnesses not listed in the pretrial witness list." Price v. Seydel, 961 F.2d 1470, 1472 (9th Cir. 1992). The Ninth Circuit has held that the following factors should be considered: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; (4) bad faith or willfulness in failing to comply with the court's order." Id.

The Court finds that the surprise to Defendants is slight. The witnesses Plaintiff seeks to call were listed as witnesses for the defense. They could be expected to be rigorously cross-examined. See Price, 961 F.2d at 1472 ("Seydel was listed as a witness on the defense's pretrial witness list. He expected to be rigorously cross-examined by [Plaintiff] Price's attorney when he took the stand."). In fact, Plaintiffs have already taken Defendant Wood's deposition. Cf. Bonin v. Calderon, 59 F.3d 815, 828 (9th Cir. 1995) (finding that the Plaintiff did not depose the undisclosed witness or place him under subpoena). There is also no evidence that Plaintiffs acted in bad faith or sought to call the witnesses in order to surprise Defendants. See Price, 961 F.2d at 1472 ("There is no evidence that Price wished to call Thomas Seydel in order to surprise the defense or that he had willfully or in bad faith disregarded the court's pretrial order."); cf. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1140 (9th Cir. 2006) (determining that Plaintiff's "repeated failure to disclose the witness was willful"). Finally, the witnesses' testimony is crucial to Plaintiffs' case and excluding them could be fatal. See Price, 961 F.2d at 1472 ("Seydel's testimony was crucial to Price's case."); cf. Reed v. Tracy, 647 F. App'x 730, 731 (9th Cir. 2016) ("Reed failed to file a pretrial order, and neither excluded witness was essential to his case[.] Thus, Reed was not prejudiced by the district court's decisions."). Therefore, the additional witnesses should be allowed to testify even though they were not included in Plaintiffs' pretrial order.

### B. Undisclosed Exhibits

Next, Plaintiffs seek to introduce certain additional exhibits. Some of these exhibits are Defendants' exhibits but were not listed on Plaintiffs' exhibit list.[1] Some of these exhibits were previously disclosed to Defendants, including in the form of attachments to the Second Amended Complaint.[2] Some of the exhibits are public documents of which the Court takes judicial notice. See Harris v. Cnty. Of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (finding that courts may "take judicial notice of undisputed matters of public record").[3] However, a few exhibits appear to not have been disclosed to Defendants prior to this time.[4] Defendants object to Plaintiffs' use of these exhibits pursuant to Rule 26(a)(1)(A)(ii), which requires a party to disclose all documents they may use to support their claim, and pursuant to Rule 37(c)(1), which prevents a party from using information that was undisclosed at trial unless the failure was substantially justified or is harmless. Therefore, Defendants argue that Plaintiffs should be foreclosed from relying on these exhibits.

The Court finds that Plaintiffs have failed to formally disclose, in writing, certain exhibits in a timely manner. The Court finds that the majority of these exhibits will not result in prejudice or surprise to the Defendants. All but a narrow few of the exhibits, such as the Arizona Interstate Compact in Exhibit 10A, are Defendants' own exhibits, part of the existing record, or state court documents of which the Court may take judicial notice. The purpose of disclosures is to prevent

---

[1] For example, Exhibits 24E, 24F, 24G, 24H, and 24I were exhibits listed by Defendants.

[2] Exhibits 1A, 2H, 3B, 4A, 5D, 9F, 12A, 13B, 14A, 16J, 17A, 20A, and 22B are lifetime supervisions agreements created by the State. They were attached as exhibits to the Second Amended Complaint, are documents originally created by Defendants, and signed by members of Parole and Probation. Exhibit 10B are documents from Pine County Superior Court in Arizona. They were also attached to the Second Amended Complaint and part of the existing record in this case. Exhibit 11I is a Board of Parole Commissioners Worksheet for Lifetime Supervision for Sex Offenders that was attached to the Second Amended Complaint and created by Defendants. Exhibit 1G is a Board of Parole Commissioners Action that was attached to the Second Amended Complaint and created by Defendants.

[3] Exhibits 14C, 14J, and 14I are state court documents of which the Court may take judicial notice.

[4] Exhibit 5J, Doe 7's Special Conditions for Lifetime Supervision, 9Z, an additional page of Doe 12's lifetime supervision agreement, Exhibit 15B, Doe 21's Lifetime Supervision Agreement, Exhibit 15H, a letter amending Doe 21'2 conditions of lifetime supervision, Exhibit 18B, Doe 27's lifetime supervision agreement, Exhibit 18A, an Order amending Doe 27's conditions of supervision, Exhibit 19D, Doe 28's amended order setting conditions of lifetime supervision, Exhibit 19J, Doe 28's lifetime supervision agreement and special conditions of lifetime supervision, Exhibit 21A, a letter from the Nevada Board of Parole Commissioners to Doe 30 imposing lifetime supervision, Exhibit 21B, Doe 30's unsigned Special Conditions for Lifetime Supervision, Exhibit 23A, an Order setting conditions of lifetime supervision, and Exhibit 23G, a document reflecting the honorable discharge from parole, were not attached to the Second Amended Complaint. However, they were documents originally created by Defendants. In contrast, Exhibit 10A, the Arizona interstate compact, was not previously disclosed to Defendants during discovery, was not attached to the Second Amended Complaint, and was not a document that the Defendants themselves created.

unnecessary surprise and to streamline litigation. If Defendants were aware of the documents, either because they were the party to originally disclose them, or because the documents were filed as attachments to the Second Amended Complaint, any failure by Plaintiff to again disclose the documents to Defendants does not result in unfair prejudice to Defendants. The Court finds that the information contained in the exhibits was disclosed to Defendants through the course of litigation, whether through the Second Amended Complaint or later filings. Therefore, Defendants have long been aware of the evidence in this record.

Further, the Court finds that the untimely disclosure is not sufficiently prejudicial to justify excluding the exhibits. Doing so would amount to dismissal of Plaintiffs' case. There is no evidence of willfulness or bad faith to support such case-ending sanctions. Instead, the Court finds that their failure was the result of a misunderstanding. In this case, the parties previously discussed the exhibits. The misunderstanding concerns how and when these exhibits would be introduced. In a stipulation filed with the Court, Plaintiffs withdrew a number of their exhibits and stipulated to all of Defendants' exhibits. They believed they would be able to rely on Defendants' exhibits in their case in chief. Based upon this, the Court finds that Plaintiffs have not acted in bad faith, or willfully failed to disclose the exhibits. Further, the strong public policy favoring a decision on the merits whenever reasonably possible cautions against such exclusionary sanctions. See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). Doing so in this case would foreclose relief to Plaintiffs due to their attorneys' misunderstanding. See, e.g., Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (exercising discretion to deny exclusion sanction as a matter of "fairness" and to avoid an "unjust" result). Instead, the Court notes the availability of other sanctions. For these reasons, the Court refuses to impose the drastic sanction requested by Defendants and denies Defendants' request to exclude the majority of the exhibits. However, Exhibit 10A was not previously disclosed to Defendants, was not part of the existing record of the case, and was not originally created by Defendants. Therefore, the Court will not admit Exhibit 10A.

### C. Sanctions

Although the Court declines to exclude the exhibits and witnesses, the late disclosure is

sanctionable. The Court, in its discretion, finds that the sanction of monetary fees is an appropriate remedy for the failure of Plaintiffs' counsel to properly and timely disclose the witnesses and exhibits at issue here. See R & R Sails, Inc., 673 F.3d at 1247 (finding, in imposing a sanction for noncompliance with disclosure rules, that a district court is required to "consider the availability of lesser sanctions") (internal citations omitted).

The text of Rule 37(c) provides that, "[i]n addition to or instead of" exclusion sanctions, the Court may impose other sanctions, including payment of reasonable expenses (including attorneys' fees), informing the jury of the party's failure, and any other appropriate sanction. Fed. R. Civ. P. 37(c)(1)(A)–(C). A court has wide discretion in determining the appropriate sanction. See, e.g., Yeti by Molly, 259 F.3d at 1106; Dahl v. City of Huntington Beach, 84 F.3d 363, 367 (9th Cir. 1996) (finding that a court "has great latitude in imposing sanctions for discovery abuse"). Discovery sanctions "must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 763-64 (1980) (cleaned up). Here, Plaintiffs have failed to comply with Rule 26. Defendants expended considerable energy and resources as a result of the Plaintiffs' failure to clarify what exhibits and witnesses would be called in their case in chief. Therefore, the Court orders $5,000 to be paid by the Plaintiffs' counsel in this case.

///
///
///
///
///
///
///
///
///
///

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs are allowed to call Defendants Wood, Corda, and Endel as witnesses, and to present the additional exhibits at trial.

**IT IS FURTHER ORDERED** that to the extent this order does not address it, the Stipulation [217] is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel shall pay to Defendants $5,000 in sanctions on or before **May 1, 2026**.

**DATED:** March 31, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**